UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTHCARE JUSTICE COALITION, LLC,<br><br>       Plaintiff,<br><br>    v.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY,<br><br>       Defendant. | Civil Action No. 1:26-cv-11001-JEK |

## DEFENDANT'S OPPOSITION TO THE MOTION TO REMAND

Defendant UnitedHealthcare Insurance Company ("Defendant" or "UHIC") respectfully submits this opposition to Plaintiff's Motion to Remand ("Motion" or "Mot."). (ECF No. 38.)

## I.    INTRODUCTION

This is a benefits dispute brought by a litigation funder and claims aggregator that acquires benefit claims from out-of-network provider staffing companies and then seeks to monetize those claims through litigation. The underlying staffing company here filed for Chapter 7 bankruptcy in 2025, abandoning the "Providers," including by cutting off their malpractice insurance.[1] Despite this, Plaintiff advances a narrative lacking any merit to try to extract payments from ERISA[2] and Medicare plans, even though federal law does not allow the opportunistic recovery Plaintiff seeks. And through litigation entities, Plaintiff files suits in hand-picked forums, using questionable structuring tactics, which at least one federal court has rejected when it denied remand. *See Healthcare Just. Coal. NJ, LLC v. UnitedHealth Grp., Inc.* ("HJC NJ"), 2026 WL 851242, at *3 (D.N.J. Mar. 27, 2026) (rejecting testimony of alleged oral transfer to defeat diversity where "[t]here [we]re no witnesses to the alleged oral transfer [and] no contemporaneous writing" documenting the alleged transfer).

Plaintiff admits that three weeks before it filed this action, it was diverse from UHIC. Yet, it claims that the Court lacks jurisdiction because 17 days before it filed its Complaint, Allia 770 Ventures LLC (a member of eCure, LLC, Plaintiff's sole member) allegedly added Boruch Cetilin, a Connecticut citizen to its membership. However, Plaintiff's evidence does not show that Ceitlin is a citizen of Connecticut or a member of Allia 770. Ceitlin declares only that he is a *resident* of Connecticut and there is no evidence that the joinder agreement he signed made him a member. Regardless, the Court should disregard this collusive partial assignment or transfer.

---

[1] *See* Declaration of Amanda L. Genovese ("Genovese Decl."), ¶ 8 (contemporaneously filed).
[2] The Employee Retirement Income Security Act of 1974 ("ERISA").

Beyond diversity, there are independent bases support federal jurisdiction and the Court should exercise supplemental jurisdiction. *First,* ERISA completely preempts all benefit claims relating to ERISA plans administered or insured by UHIC. *Second*, because Plaintiff challenges determinations under Medicare Advantage ("MA") plans, removal is proper under the federal officer removal statute, and the claims are inextricably intertwined with the Medicare Act. Plaintiff is also not entitled to fees, as UHIC has multiple, good faith grounds for removal.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Plaintiff's Business.

Plaintiff is owned by eCure, LLC,  (FAC ¶ 6.), which has rebranded as Allia Group. Allia Group's website provides the following details regarding its business model:[3]

- "[P]ioneering healthcare litigation finance platform … target underpaid insurance claims up to approximately six years old, depending on state law."

- "Want to discover what revenue your healthcare practice could recover from old A/R tied to insurer underpayments?"

- "Using proprietary data analysis and multidisciplinary expertise, Allia Group can find unrealized potential in many insurer claim underpayments and denials going back through years of data.  Our healthcare litigation and recovery experts provide a comprehensive analysis of insurer receivables to find otherwise missed revenue recovery opportunities.  Allia fuses together deep legal, RCM and finance experience in offering a turnkey solution."

- Plaintiff/Allia provides a "bundled legal finance platform [that] pressures insurers and transforms the leverage from payors to providers."

Plaintiff seeks to litigate stale claims, including those time-barred under the controlling plans.[4]

### B.    Plaintiff's Efforts To Obtain Additional Benefits.

Plaintiff seeks to recover additional benefits relating to over 3,000 benefit claims allegedly assigned to Plaintiff.  (FAC ¶ 31; Levin Decl. (ECF No. 37) ¶ 2).)  eCure LLC

---

[3] *See* ECF No. 22, ¶ 5.
[4] *See id.* ¶ 6 & Ex. B (ECF No. 22 at 9-30).

(Plaintiff's sole member) purchases accounts including any right to allegedly sue for benefit payments. (FAC ¶ 6.) The benefit claims pertain to emergency services allegedly provided at Holyoke Medical Center, allegedly including services provided to insureds of UHIC or other entities. (*Id.* ¶ 1.) In all cases, the services were provided on an out-of-network basis (*i.e.* by providers who do not have a contract setting the rates for services). (*Id.* ¶¶ 21–22.)

### C.    Plaintiff's Conflicting Membership Representations.

eCure has 5 individual members (citizens of California, New York, Massachusetts, and Tennessee). (NOR (ECF No. 1) ¶¶ 11–13.) eCure also has two entity members: Cresson Management, LLC, and Allia 770 Ventures, LLC. (NOR ¶ 14.) Cresson's members are citizens of the U.S. Virgin Islands. (NOR ¶ 15.) As of October 31, 2025, Allia 770, a Delaware LLC, had two individual members (citizens of Indiana and Kentucky). (NOR ¶ 16.) At some point after that date, Allia 770 claims to have added at least four members, who are citizens of Michigan, Minnesota, Kentucky, and Connecticut. (Genovese Decl., Ex. A, HJC IN Listman Decl. ¶ 7.) With respect to Connecticut (the only relevant state for diversity[5] because UHIC is a citizen of Connecticut (NOR ¶ 7)), Plaintiff claims that Allia 770 added Ceitlin as a member on December 12, 2025. (Ceitlin Decl. (ECF No. 38-1) ¶¶ 1–3.) The FAC newly alleges, (FAC ¶ 7), that Ceitlin is domiciled in Connecticut, but the only evidence is Ceitlin's declaration that he is a Connecticut *resident* who "execut[ed] a joinder agreement agreeing to be bound [by] Allia Ventures, LLC's Limited Liability Company Agreement on [December 12, 2025]." (Ceitlin

---

[5] Subsequent to the filing of this matter, Plaintiff disclosed in another matter that Allia 770 Ventures allegedly has additional members, (Genovese Decl., Ex. B, S.D. Ind. Aetna Disclosure), some of whom may not be completely diverse as to certain Defendants in the FAC. However, if such a purported amendment would destroy diversity, then Plaintiff would require leave of Court, which it has not sought. 28 U.S.C. § 1447(e); *Mullane v. Portfolio Media, Inc.*, 2019 WL 12316202, at *7 (D. Mass. Nov. 19, 2019) (majority of courts hold that § 1447(e) applies even if amendment is otherwise permitted under Fed. R. Civ. P. 15(a)(1)") (citation omitted). UHIC anticipates addressing this in its response to the FAC.

Decl. ¶¶ 1, 3.)  At the time Ceitlin purportedly became a member of Allia 770, his purported membership interest was worth $0.  (ECF No. 38-2 at 2.)  Additionally, the documents that Ceitlin signed reflect that eCure is a member of Allia 770 Ventures.  (ECF No. 38-2 at 2, 4.)

### D.      The Benefit Claims.

The Claims List and Updated Claims List (defined in the Genovese Decl.) show that Plaintiff seeks to recover the difference between billed charges and the "Allowed Amount," *if any*, reimbursed by UHIC (or other payor), nearly $1.6 million.[6]  (Genovese Decl. ¶ 12.) Approximately 320 benefit claims show $0 reimbursed.  (*Id*. ¶ 13.)  Although Plaintiff now states that these $0 benefit claims are not "at-issue," it made that revision the day it served the FAC, and the day before it sought remand.  (Levin Decl. ¶¶ 2, 6.)  Over 850 at-issue benefit claims reflect $0 balance due.  (Genovese Decl. ¶ 13.)  Using the Claims List data, UHIC matched over 99% of the claims.  (Declaration of Jane Stalinski ("Stalinski Decl."), ¶¶ 4–5; Genovese Decl. ¶ 14.)  Although Plaintiff disclaims asserting any ERISA cause of action, (FAC ¶ 17), approximately 2,990 benefit claims pertain to ERISA plans ("ERISA Claims"), (Genovese Decl. ¶ 14), including where the providers accepted assignments.  (Stalinski Decl., Exs. A and C (exemplar ERISA plans) and Exs. B and D (exemplar claims forms showing assignments).)  This includes over 2,500 self-funded plans for which UHIC or affiliates provided administrative services only.  (Genovese Decl. ¶ 14.)  Certain ERISA Claims were denied for coverage-related reasons.[7]  Seven matched claims pertain to Medicare plans ("Medicare Claims").  (*Id.* ¶ 15.)

### E.      Relevant Procedural History.

On December 29, 2025, Plaintiff initiated this action in the Suffolk Superior Court

---

[6] Certain of the payors identified in the Claim List are not named as defendants.
[7] For example, certain benefit claims were denied because (1) "[b]enefits for this service are denied.  The documentation you submitted does not support the level of service billed," and  (2)"[t]his service or supply is part of a main procedure and is not covered separately."  (Genovese Decl. ¶ 14.)

4

asserting four claims against UHIC: unjust enrichment, implied-in-law contract, Mass. Gen Law c. 176G, §5(f), and unfair and deceptive practices.  (NOR ¶¶ 3, 37-38.)  UHIC removed to this Court on February 26, 2026.  (ECF No. 1.)  On April 3, 2026, UHIC moved to dismiss.  (ECF No. 27-29.)  On April 16, 2026, Plaintiff filed its FAC maintaining the same substantive counts, but amending the underlying factual allegations and purported to add two defendants (UMR, Inc. and United HealthCare Services, Inc).[8]  Plaintiff filed its motion to remand on April 17.  (ECF No. 36, 38).

## III.    ARGUMENT

### A.    Legal Standard.

UHIC "bears the burden of persuasion vis-à-vis the existence of federal jurisdiction." *BIW Deceived v. Loc. S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824, 831 (1st Cir. 1997) (affirming denial of motion to remand).  In assessing removal, courts "'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'"  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).  Thus, a removal will be sustained so long as the allegations supporting the removal are plausible on their face.  *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018).  However, "once the grounds for removal are challenged, the parties must support their jurisdictional allegations with competent proof." *Porter v. Arsenault*, 2025 WL 70327, at *2 (D. Mass. Jan. 10, 2025) (internal quotation marks omitted).  For removal on federal officer grounds, the Court does not apply any "presumption against removal" … and "courts must liberally construe [28 U.S.C.] § 1442(a)." *Betzner*, 910 F.3d at 1014.

---

[8] These additional Defendants waived service and have not yet appeared.  (*See* ECF No. 41, 42).

B.      **This Court Has Diversity Jurisdiction.**

1.      **Plaintiff is not a citizen of Connecticut.**

The parties are completely diverse under 28 U.S.C. § 1332(a).  Plaintiff, (FAC ¶ 4), concedes that there is more than $75,000 in controversy.  (*See also* Genovese Decl. ¶ 12 (Plaintiff seeks nearly $ 1.6 million).)  There is likewise no dispute that UHIC is a citizen of Connecticut.  (Mot. at 8; NOR ¶ 7); *see also* 28 U.S.C. § 1332(c)(1).  Accordingly, this Court has jurisdiction so long as Plaintiff was not a citizen of Connecticut when the case was removed. *Harrison v. Granite Bay Care, Inc.*, 811 F.3d 36, 40 (1st Cir. 2016) (date of removal governs).

As a limited liability company ("LLC"), Plaintiff has the citizenship of each partner or member.  *Carden v. Arkoma Assocs*., 494 U.S. 185, 187–92 (1990).  eCure is Plaintiff's sole member.  (*See* Mot. at 7; NOR ¶ 10.)  Although eCure has multiple members (including multiple individuals and two LLCs), none of its individual members is a citizen of Connecticut.  (NOR ¶¶ 11–13.)  Similarly, Cresson Management, LLC (one of eCure's LLC members) has no members who are Connecticut citizens.  (NOR ¶¶ 14–15.)  That leaves Allia 770, a Delaware LLC (and eCure's other LLC member).  As of October 31, 2025, it had two individual members who were citizens of Indiana and Kentucky, (NOR ¶¶ 10, 16), so there was complete diversity.[9]

Plaintiff contends that it destroyed diversity on December 12, 2025, by adding Ceitlin as an Allia 770 member.  (Mot. at 7–8; Ceitlin Decl. ¶ 3; ECF No. 38-2 at 2-5.)  "Natural persons are citizens of the state in which they are domiciled."  *BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691, 695 (1st Cir. 2023).  "A person's domicile is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning .... Proving domicile requires two showings: (1) physical presence in a place, and (2)

---

[9] Plaintiff's asserts that despite Allia 770's stake in eCure, eCure is Allia 770's managing member.  (ECF No. 38-2 at 2, 4.)  Plaintiff does not explain the details of eCure being a member of its own member.

the intent to make that place one's home." *Porter*, 2025 WL 70327, at *2.  Here, however, Plaintiff's initial Complaint alleged the legal conclusion (ECF No. 31 at 6, ¶ 7), that "Allia 770 Ventures has at least one individual member whose citizenship is in Connecticut," with no supporting facts.  Beyond this, Plaintiff's Motion (and Ceitlin's declaration) refer only to Ceitlin's *residence*.  (Mot. at 8; Ceitlin Decl. ¶ 1.)  In short, the record demonstrates at most that Ceitlin is a *resident* of Connecticut as of February 2026, not that he is domiciled there.[10]  Thus, there are no Connecticut citizens in Plaintiff's LLC hierarchy and there is complete diversity.

Additionally, the record does not support Plaintiff's contention that Ceitlin is a "member" of Allia 770.  Ceitlin's declaration states that he is "an owner and holder of record of units of Allia 770" and that he "became a member of Allia 770 … by executing a joinder agreement … on [December 12, 2025]."  (Ceitlin Decl. ¶¶ 1, 3; *see also* ECF No. 38-2 at 3 (Ceitlin "agree[ing] to become an Economic Member under, party to and bound by" Allia 770 LLC Agreement.)

 But owning units and executing a joinder agreement agreeing to become an Economic Member do not necessarily establish membership under Delaware law (Allia 770 is a Delaware LLC).  Any effort to add members must accord with the LLC's agreement and/or be with the unanimous consent of all existing members.  Del. Code tit. 6, § 18-301(b)(1) (non-assignees); Del. Code tit. 6, § 18-301(b)(1) (assignees).  Yet neither Plaintiff's Complaint, its FAC, nor its motion to remand offers any details regarding the provisions of Allia 770's LLC Agreement, including whether simply signing a joinder agreement creates a member under Allia 770's LLC Agreement.  Nor does Plaintiff offer any allegation or declaration as to whether Allia 770's other

---

[10] Although "using … 'resident' in complaint rather than 'citizen' or 'domiciliary' does not preclude … diversity" because "[i]t is assumed … that a person's current residence is also his domicile," *BRT Mgmt.*, 68 F.4th at 696 n.8, the initial Complaint used neither, instead opting for an unsupported legal conclusion. The FAC likewise contains no supporting facts for its domicile allegation.  (FAC ¶ 7.)  And Plaintiff's evidentiary submission, (ECF No. 38-1, 38-2), only notes Ceitlin's current residence.

members unanimously consented to Ceitlin's membership.  The record does not establish that Ceitlin a member of Allia 770 and there is complete diversity regardless of his citizenship.[11]

Beyond this, relying on Ceitlin overlooks an anomaly of Plaintiff's LLC structure.  In order to determine an LLC's citizenship, "the process is 'iterative,' and a party must 'trace the citizenship of any member that is an unincorporated association through however many layers of members or partners there may be.'"  *BRT Mgmt.*, 68 F.4th at 696.  Here, however, this is—on Plaintiff's assertion of its corporate structure—circular.  Plaintiff claims that Allia 770 is a member of eCure, while offering evidence eCure acted in its purported capacity of Allia 770's managing member to accept Ceitlin's joinder agreement.  (ECF No. 38-2 at 4.)  eCure controls Allia 770, so Ceitlin's purported Allia 770 membership cannot destroy diversity.

Plaintiff argues, (Mot. at 8), that UHIC "does not seriously contest" Plaintiff's citizenship allegations and "lacks a good faith basis to challenge" Ceitlin's citizenship or assert diversity.  This disregards the evidence above, and overlooks two key points.  *First*, Plaintiff does not dispute (*see* Mot. at 8) that it disclosed in October 2025, that it did *not* have any members who were citizens of Connecticut.  *Second*, the U.S. District Court for the District of New Jersey *expressly* rejected testimony regarding a purported oral transfer (on behalf of Plaintiff) to defeat diversity in another case.  *HJC NJ*, 2026 WL 851242, at *3 (declining to credit testimony of unwitnessed oral transfer that contradicted corporate documents and lacked "contemporaneous writing"); *id.* at *2 (all of the agreements purporting to effectuate transfer were executed "on February 23, 2024, nearly one month after Removal" with retroactive effective dates).

### 2.    The Court should disregard Plaintiff's effort to avoid diversity.

Even if Ceitlin were an Allia 770 member and Connecticut citizen, the Court should

---

[11] If Court requires further information, it should grant Defendant's motion for jurisdictional discovery.

disregard his citizenship.  The Supreme Court has "interpreted the diversity jurisdiction statute to require courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction."  *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014) (plaintiff cannot "create diversity by collusive[] assign[ment]").  Thus, multiple courts (including in this District) have held that collusive partial assignments cannot destroy diversity.  *E.g. Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990) (affirming denial of remand where plaintiff transferred 2% interest in claims to foreign entity shortly before filing, foreign entity had no prior interest in litigation, the transferor controlled the litigation, and the parties were represented by same counsel); *Picquet v. Amoco Prod. Co.*, 513 F. Supp. 938, 943 (M.D. La. 1981) (disregarding transfer of 1/108 interest to non-diverse company because "corporation was not formed until plaintiffs had already determined to institute an action[,] … [t]he assignment was made shortly before the action was instituted and … the overriding motive for the assignment … was to prevent removal"); *JMTR Enters., L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 92 (D. Mass. 1999) (denying remand with fact pattern "virtually identical" to *Picquet* because "federal district courts 'have both the authority and the responsibility, ... to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment …  if … made principally to defeat removal'" ).

To determine if an assignment is collusive (a question of fact), courts look to a "'pattern' of facts … indicative of a plaintiff's impermissible attempt to destroy diversity through assignment," including  "(1) a partial, rather than total, assignment; (2) lack of consideration paid by the assignee … ; (3) the plaintiff's motive … to stay in state court; (4) the assignee had no interest in the litigation before the assignment; and (5) the assignment was made shortly before the suit was filed." *JMTR*, 42 F. Supp. 2d at 92 (citing *Grassi*, 894 F.2d at 186)).

The undisputed facts demonstrate a collusive effort to destroy diversity jurisdiction by assigning Ceitlin a membership interest in Allia 770. (*See* Ceitlin Decl. ¶ 3; ECF No. 38-2.) The parties were diverse on December 11, 2025 (the day before Ceitlin purportedly became an Allia 770 member and 18 days before the case was filed). (Ceitlin Decl. ¶ 3; ECF No. 38-2 at 5.) Moreover, his membership is a partial interest in Allia 770 (which itself only has a partial interest in eCure). Beyond this, as noted *supra*, eCure manages Allia 770 (which purportedly owns part of eCure), so it is unclear why Allia 770 exists at all. And the record reflects no prior connection between Ceitlin and this litigation. Further, the joinder agreement (1) does not reflect that Ceitlin paid any consideration for his purported membership and (2) reflects the membership interest he acquired had no value. Thus, even in Plaintiff's telling, Ceitlin became a member of Allia 770 right before this case was filed without any prior interest in the claims or Plaintiff, without paying any consideration, with an interest that had no value, and with eCure (via Plaintiff) maintaining full control over the litigation and Allia 770. These highly suspect facts reflect a membership change for improper purposes, so "the transfer was made for the purpose of defeating federal diversity jurisdiction" and remand is improper. *Picquet*, 513 F. Supp. at 941.[12]

Plaintiff argues, (Mot. at 8–9 n.6 (citing *Pearson Air Constr., LLC v. PCL Constr. Servs., Inc.*, 2024 WL 3634914, at *4 (D. Colo. March 18, 2024))), that the foregoing authority is inapposite because Plaintiff did not partially assign claims, but instead restructured its LLC hierarchy, which is purportedly not reviewable. But in *Pearson*, the plaintiff LLC restructured *itself* to add a non-diverse member. 2024 WL 3634914, at *4. Here, Plaintiff did not restructure itself or eCure (Plaintiff's sole member). Instead, it purported to add a single non-diverse member to Allia 770, which eCure itself controls. Thus, Plaintiff's asserted basis for lack of

---

[12] Plaintiff's efforts in the DNJ Matter to transfer its ownership interest to a non-diverse entity via Listman's purported oral transfer further suggests a pattern and practice of evading diversity jurisdiction.

diversity is the purported transfer of a fractional membership interest (worth $0) in a tertiary LLC under eCure's control. Plaintiff's transaction is significantly more analogous to a partial assignment than a complete assignment and allows the Court to disregard Ceitlin's citizenship.

### C.    ERISA Complete Preemption Supports Jurisdiction.

The Court should reject Plaintiff's argument, (Mot. at 9-14), that ERISA preemption does not apply. A state law cause of action, no matter how denominated, is completely preempted and removable if: (1) the plaintiffs "could have brought [their] claim under ERISA § 502(a)(1)(B)"; and (2) "no other independent legal duty … is implicated." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 66 (1987) ("Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of [29 U.S.C. § 1132(a)] removable [.]"). And federal jurisdiction exists if a single claim for reimbursement, even out of hundreds or thousands, is preempted. 28 U.S.C. § 1441(c).

Plaintiff's claims satisfy *Davila* prong one. "[A] participant or beneficiary" may bring a civil action "to recover benefits due" under plan terms, and to enforce or clarify rights under a plan. 29 U.S.C. § 1132(a)(1)(B)). If a participant assigns his/her claims to a provider, that provider may assert ERISA claims. *See City of Hope Nat. Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223, 228 (1st Cir. 1998) ("As the assignee of an ERISA beneficiary, City of Hope satisfies the standing requirements of section 1132[.]"). Here, the record reflects that Plaintiff could have brought its claims under ERISA: (1) Plaintiff alleges that it is "the ultimate assignee of claims of Lakes/National Emergency Physicians Inc. (the 'ER Group') against United," (FAC ¶ 1); and (2) for exemplar at-issue ERISA Claims, the claims forms affirm assignments to the Providers from plan participants. (Stalinski Decl., Exs. B and D (noting accepted assignments).)

Beyond this, the record further reflects the plausibility of UHIC's allegation of

11

assignments. The vast majority of Plaintiff's claims pertain to self-funded ERISA plans. (Genovese Decl. ¶ 14.) For over 850 claims, the Providers received payment for the full billed charges, such that Plaintiff must be challenging some other aspect of the benefit determination. This includes hundreds of claims where the payor is UMR, Inc. (an entity that provides claims administration services to self-funded ERISA plans). And over 300 claims on the Claims List are services for which payment was denied in the entirety.[13] Given the overwhelming number of ERISA claims, the fact that over 1,000 claims on the Claims List were either (1) denied or (2) fully paid allows the inference that Plaintiff is challenging some aspect of the claims adjudication or coverage decision itself—which would not be possible without assignments. *See Danca v. Priv. Health Care Sys., Inc.*, 185 F.3d 1, 6 (1st Cir. 1999) ("all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans [should] be treated as federal questions governed by [ERISA] § 502(a)"). This is particularly true given that Plaintiff does not deny Providers' assignments—it just claims not to be seeking to enforce them. (*See* Mot. at 10).

This inference is further supported by Plaintiff's allegation that it is the assignee of the Providers' "rights to reimbursement against health plans who underpaid them." (FAC ¶¶ 1, 3–5.[14]) This allegation is only plausible if there are assignments of benefits from the patients to the Providers. (*See* NOR ¶¶ 32–33.) Similarly, Plaintiff alleges that the Providers billed (and were paid by) UHIC/its affiliates, (*see* FAC ¶¶ 3–5), which further demonstrates assignments. *See Sanjiv Goel, M.D., Inc. v. United Healthcare Servs., Inc.*, 2024 WL 1361800, at *4 (C.D. Cal.

---

[13] Plaintiff claims that the 300 zero-pay claims are no longer at issue, (Levin Decl. ¶ 9), but their inclusion in the Claims List and Updated Claims List still supports a reasonable inference of assignments.
[14] UHIC cites the FAC because these allegations control the existence of a federal question. *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 44 (2025) (excision of federal claims extinguished federal-question jurisdiction"). But the amendments are irrelevant to good faith in removing.

Mar. 29, 2024) (finding first prong of *Davila* test satisfied where "[p]laintiff has pled that it has already billed and received, at least in part, funds from Defendant for its services—a request that would not have been possible without assignment").  Moreover, insurers need only pay claims if they "contract[] with patients to shoulder the burden of paying for their care," *AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co*., 142 F.4th 403, 408 (6th Cir. 2025), so a provider is only entitled to recover from an insurer to if the insurer is obligated to cover the care of its insured. Plaintiff is the Providers' assignee, so it could have brought its claims pursuant to ERISA.

Plaintiff argues, (Mot. at 10), that (1) it is bringing claims in its own right, not based on assignments to providers or the rights of "United members" and (2) courts have rejected reliance on unpleaded assignments.  But nearly 30% of the benefit claims—which it concedes are at issue—are for services where the Providers received *exactly* the billed amount they sought. None of Plaintiff's cases contains any such fact pattern.  *E.g. Zhang v. Cigna Healthcare, Inc.*, 2023 WL 3727936, at *2 (E.D. Va. May 30, 2023) ("nothing in the record to suggest … participants or beneficiaries of the ERISA plans … made … valid assignment"); *Healthcare Just. Coal. CA Corp. v. UnitedHealth Grp., Inc.*, 2025 WL 303950, at *4 (C.D. Cal. Jan. 27, 2025) ("[c]omplaint identifies 'independent rights to payment,' that do not rely on the existence of assignments under ERISA, for its claims").[15]  Moreover, Plaintiff's argument fails to "'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'"  *Dart Cherokee*, 574 U.S. at 87 (2014).  Thus, Plaintiff could have brought its claims under ERISA.

As to *Davila* prong two, Plaintiff's state law claims are "not 'entirely independent of' ERISA," because the ERISA plans form "an essential part" of the claims.  *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 726–27 (7th Cir. 2017); *Cannon v. Blue Cross & Blue Shield*

---

[15] *HJC CA* also noted that "at least two district courts have held otherwise."  2025 WL 303950, at *4.

13

*of Massachusetts, Inc.*, 132 F.4th 86, 92 (1st Cir. 2025) ("wrongful death claim [wa]s merely derivative of any claim [decedent] could have brought for damages based on breach of the policy" and was therefore not independent of ERISA plan).  Plaintiff's claims, although purportedly brought under Massachusetts law, challenge the administration of benefits for claims submitted to UHIC and adjudicated in the course of administering the relevant plans, while disclaiming any independent reimbursement agreement between the out-of-network providers and UHIC.  (FAC ¶¶ 17, 22.)  Accordingly, UHIC's obligation, if any, to reimburse above the "Allowed Amount" for the individual benefit claims, including at billed charges, arises solely from the ERISA plans and those plans are thus "essential" to Plaintiff's claims.  Indeed, Plaintiff's unjust enrichment, implied-in-law contract, Mass. Gen Law c. 176G, §5(f) claims (Counts I-III) are expressly premised on UHIC's obligation—by virtue of the plans at issue—to cover its insureds' medical expenses.  (*E.g.* FAC ¶¶ 42, 53, 60–61.)  *See also Nathaniel L. Tindel, M.D., LLC v. Excellus Blue Cross Blue Shield*, 2023 WL 3318489, at *7 (N.D.N.Y. May 9, 2023) ("the unjust enrichment claim would require the Court to find that 'an ERISA plan exists' in order to demonstrate that [d]efendant 'received a benefit' and that retention of that benefit without payment would be unjust").  Similarly, ERISA completely preempts a claim under Mass Gen. Laws c. 93A—the statute that Plaintiff relies on for Count IV.  (FAC ¶ 67)— challenging the processing of an ERISA benefit claim.  *See Hotz v. Blue Cross and Blue Shield of Mass., Inc.*, 292 F.3d 57, 59-60 (2002) ("claim against the insurer alleging undue delay in processing her physician's referral").  Plaintiff argues that it (unlike the *Hotz* plaintiff) challenges "systemic" underpayment, not coverage issues, but this ignores (1) it challenges the plans' benefit determinations and (2) hundreds of the at-issue claims have no rate dispute.

Plaintiff argues, (Mot. at 11–14), that even if there were assignments, rate of payment

disputes fall outside ERISA § 502(a), 29 U.S.C. § 1132(a), and arise from legal duties independent of ERISA.  Initially, Plaintiff strategically overlooks that certain ERISA Claims were denied for coverage-related reasons[16]—this, alone, disposes of Plaintiff's argument.  Still, Plaintiff strategically ignores the over 850 claims for which the relevant plans allowed the exact amount that the Providers sought.   Plaintiff does not explain how it can have a rate of payment dispute for claims which purportedly have zero balance due.  These claims thus necessarily challenge plan adjudication or coverage determinations.  Plaintiff argues, (Mot. at 5–6, 12–13), that the zero-pay claims are "partial denials" of certain service codes, but this does not change the fact that the relevant ERISA plans denied coverage for the services at issue.  Plaintiff also argues, (Mot. at 6), that its initial Complaint did not seek recovery for any denials, but it ignores that the Complaint *also* incorporated the Claims List by reference, (ECF No. 31 at 9, ¶ 26), and the Claims List reflected a balance due for the zero-pay claims.  Plaintiff's claims are not independent of ERISA.[17]

 Without the ERISA plans, Plaintiffs would have no benefit claims and no basis to sue UHIC for additional benefits, so the claims are not independent of ERISA.

### D.        UHIC Properly Removed On The Basis Of Federal Officer Removal. [18]

Plaintiff's remand motion also fails because UHIC properly invoked federal officer removal.  28 U.S.C. § 1442(a)(1) permits removal by "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office."

---

[16] For example, certain benefit claims were denied because (1) "[b]enefits for this service are denied.  The documentation you submitted does not support the level of service billed," and  (2)"[t] This service or supply is part of a main procedure and is not covered separately."  (Genovese Decl. ¶ 14.)

[17] Plaintiff's effort to recover on zero-pay claims is highly relevant to good faith.

[18] The Court should stay any remand order pending UHIC's timely appeal.  *See* 28 U.S.C. § 1447(d).

"To avail itself of § 1442(a)(1), a removing party must establish: (1) that it was acting under a federal officer's authority, (2) that the charged conduct was carried out for or relating to the asserted official authority, and (3) that it will assert a colorable federal defense to the suit." *Gov't of Puerto Rico v. Express Scripts, Inc,*, 119 F.4th 174 (1st Cir. 2024) (reversing remand order). Section 1442(a) "contemplates removal of suits against officers or their agents for acts that were not done under color of their offices, so long as the suits 'relat[e] to' such acts." *Chevron USA Inc. v. Plaquemines Par., Louisiana*, 608 U.S. ---, 146 S. Ct. 1052, 1061, 1063 (2026) (suit 'relat[ed]to' federal duties" because defendant "plausibly alleged a close relationship between its challenged conduct and the performance of its federal duties"); *Karfunkel v. BCBS of Mass.*, 2026 WL 751990, at * 4, 6 (D. Mass. Mar. 12, 2026) (denying remand and holding that even if the plaintiff could " prove that the [alleged misconduct] occurred because of an act not specifically contemplated by the government contract, it is enough that the contracts gave rise to the [challenged acts]"). Here, the Medicare Claims support removal. (Genovese Decl. ¶ 15.)

*First*, "'person' includes a corporation and a limited liability company," so [UHIC] satisfies the 'person' requirement. *Express Scripts*, 119 F.4th at 185 n.4  And, *second*, UHIC "act[ed] under the United States" requirement because but for its MA plan administration, the United States would have to provide services directly to Medicare enrollees.  A person acts under the United States if that person "help[s] the Government to produce an item it needs and thus helps officers fulfill other basic governmental tasks … because it assists with a governmental function that the government itself would have had to perform" *Id.* at 185–86 (internal quotations omitted). *See Nw. Mem'l Healthcare v. Aetna Better Health of Illinois, Inc.*, 2023 WL 2745549, at *3 (N.D. Ill. Mar. 31, 2023) ("Defendant was assisting the federal government in reimbursing Plaintiff for its treatment of qualifying Medicaid or Medicare patients.").  Without Medicare

16

Advantage Organizations (MAOs, like UHIC), the government would provide Medicare services itself. *See Express Scripts*, 119 F.4th at 185–86 (entity acts under the federal government if "it assists with a governmental function that the government 'itself would have had to perform'"). Moreover, the weight of authority holds that MAOs providing MA (Medicare Part C) plans act under the United States. *MHA, LLC v. Amerigroup Corp*, 2021 WL 226110, at *4-5 (D.N.J. Jan. 21, 2021) (citing *Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012) and holding "in agreement with nearly every other court that has considered the issue, that [managed care organizations] … 'act[] under' the government by providing Medicare Advantage plans" because they "'assist[]' the government and 'help[]' carry out the government's duty").

*Third*, UHIC's challenged actions relate to its federal duties. An entity meets this criterion if there is a "a close relationship between its challenged conduct and the performance of its federal duties." *Chevron*, 146 S. Ct. at 1061, 1063; *Express Scripts*, 119 F.4th at 186 (First Circuit has "consistently given this requirement a broad reading"); *see also Ruppel*, 701 F.3d at 1181. Here, the Medicare Claims relate to challenges to benefits determinations under MA plans, which UHIC made in connection with services provided to the government. Thus, Plaintiff seeks benefit payments from UHIC for claims that arose while UHIC acted under color of federal authority, *i.e.* in the course of administering the MA plans. *See Nw. Mem'l Healthcare*, 2023 WL 2745549, at *4 ("defendant acted under color of federal authority" where defendant provided coverage "pursuant to … contracts between [Illinois] and CMS").

*Fourth*, UHIC has "colorable federal defenses" of preemption and exhaustion. UHIC's "defense[s] need only be colorable, *i.e.* not "'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial and frivolous.'" *Express Scripts*, 119 F.4th at 186. The Medicare Act preempts "any State law or regulation … with respect to [Medicare Part

17

C] plans … offered by MA organizations." 42 U.S.C. § 1395w-26(b)(3); 42 C.F.R. 422.402.  It also requires exhaustion for MA claims.  *See* 42 U.S.C. § 1395w-22(g); *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F. 4th 905, 914, 919-20 (9th Cir. 2022) (§ 1395w-22(g) mandates exhaustion as to " Medicare Advantage program"); *Hosp. Amerimed Cancun S A DE C V v. Martin's Point Health Care, Inc.*, 2024 WL 1769171, at *5 (D. Me. Apr. 23, 2024) ("claims seek[ing] to make a MAO pay for services … to a Medicare Part C enrollee" require exhaustion).

Accordingly, where a plaintiff challenges a MAO's benefit determination, the MAO has colorable preemption and exhaustion defenses.  *E.g. Nw. Mem'l Healthcare*, 2023 WL 2745549, at *4 ("because certain patients are covered by Medicare and Defendant's federal defense need only be plausible, the Court finds that Defendant has sufficiently met this factor"); *Escarcega v. Verdugo Vista Operating Co., LP*, 2020 WL 1703181, at *7 (C.D. Cal. Apr. 8, 2020) ("colorable federal defenses exist" with respect to suits against MAO administrators concerning benefit administration decisions).  Plaintiff seeks to impose state law duties on benefits determinations made in administering Medicare Advantage plans without administrative exhaustion.  These claims are subject to colorable exhaustion and preemption defenses and removal was proper.

Plaintiff argues, (Mot. at 14–15), that none of the claims related to a FEHBA or MA plan, but although the FAC purports to disclaim such claims, it includes them on the Claims List.  "[A] valid disclaimer must eliminate any basis for federal officer removal so that, upon remand, there is no possibility that a state court would have to determine whether a defendant acted under a federal officer's authority." *Express Scripts*, 119 F.4th at 187-88 (disclaimer "that requires a state court to determine the nexus 'between the charged conduct and federal authority'" does not preclude removal) (citation omitted).  Plaintiff asserts Medicare-governed claims, so a state court would be required to assess the connection between the claims and federal authority.  Plaintiff

also argues, (Mot. at 14–15), that UHIC cannot remove simply because it offers MA plans. However, Plaintiff seeks to recover on the Medicare Claims. And though UHIC did not have the Claims List when it removed, it had Provider information (which reflected Medicare services) and Plaintiff has asserted MA claims against UHIC and its affiliates. (Genovese Decl. ¶ 17.)

Plaintiff also argues, (Mot. at 15), that Medicare preemption does not apply to rate of payment claims and that that UHIC was not "acting under" the federal government. However, defendants need only assert a close relationship between the challenged conduct and federal duties. *Chevron*, 146 S. Ct. at 1061, 1063. Plaintiff's citations for its acting under argument are also against the weight of authority and incompatible with First Circuit law. Indeed, *Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 F. App'x 619, 623–24 (6th Cir. 2016) held that to qualify for federal officer removal, a person must "perform a job that the government would have to perform itself[.]" In the First Circuit, however, this Court must determine whether UHIC "help[s] the Government to produce an item it needs and thus helps officers fulfill other basic governmental tasks … because it assists with a governmental function that the government itself would have had to perform," *Express Scripts*, 119 F.4th at 185–86, not whether it would have provided an identical *plan*. Thus, MAOs act under the United States because the government contracts with MAOs to provide a service (Medicare coverage) that it would otherwise have to provide itself. Additionally, *Ohio State* is not compatible with authority that courts must liberally construe § 1442(a). *MHA*, 2021 WL 226110, at *6.

UHIC thus meets the requirements of federal officer removal.

### E.    Plaintiff Is Not Entitled To Attorneys' Fees.

The Court should reject Plaintiff's request for fees, because UHIC removed this matter in good faith. Even if a case is remanded, "absent unusual circumstances, attorney's fees should

19

not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). "The First Circuit has not defined what constitutes 'objectively reasonable' grounds for removal, although many district courts have declined to award fees unless the facts are so one-sided as to have made remand a foregone conclusion." *Kenn v. Eascare*, LLC, 483 F. Supp. 3d 26, 37 (D. Mass. 2020) (denying fees).

UHIC had multiple reasonable bases for removal. Plaintiff argues, (Mot. at 16), that UHIC's position on diversity is frivolous. But as discussed *supra*, Plaintiff tried destroy diversity by purportedly adding a Connecticut member to Allia 770—a tertiary LLC controlled by eCure—less than 3 weeks before this case was filed, in circumstances highly analogous to subterfuge that another Court in this District has rejected. *JMTR Enters.*, 42 F. Supp. 2d at 92. This is not "conjecture" or "tortured interpretation" of citizenship. (*Contra* Mot. at 16.)

Plaintiff also argues, (Mot. at 15–16), that multiple courts have remanded in rate of payment cases. But Plaintiff's Claims List contained *hundreds* of claims for which the plans either paid no reimbursement or paid full reimbursement. Regardless of Plaintiff's post-removal amendments, it was reasonable for UHIC to allege that this is not simply a rate of payment case.[19] Similarly, Plaintiff's argument, (Mot. at 17), that UHIC could not reasonably rely on federal officer preemption fails to contend with (1) that its Claims List has claims pertaining to MA plans and (2) the Complaint identified the facility where the at-issue services were provided (which allowed UHIC to determine the types of claims and plans likely at issue).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied in its entirety.

---

[19] Plaintiff failed to produce its Claims List until after removal (despite incorporating it by reference in the initial Complaint), but Plaintiff's claims lists in other similar cases brought against UHIC and related entities have likewise included denied claims, non-rate disputes and MA claims. (Genovese Decl. ¶ 17.)

## REQUEST FOR ORAL ARGUMENT

Pursuant to L.R. 7.1(d), UHIC requests oral argument.

DATED:  May 29, 2026                           Respectfully submitted,

                                               UNITEDHEALTHCARE INSURANCE
                                               COMPANY


                                               By: /s/ *Amanda L. Genovese*
                                                   Michael E. Steinberg (BBO# 690997)
                                                   msteinberg@seyfarth.com
                                                   SEYFARTH SHAW LLP
                                                   Seaport East
                                                   Two Seaport Lane, Suite 1200
                                                   Boston, Massachusetts  02210-2028
                                                   Telephone: (617) 946-4800
                                                   Facsimile:  (617) 946-4801

                                                   Jules A. Levenson (*pro hac vice*)
                                                   jlevenson@seyfarth.com
                                                   SEYFARTH SHAW LLP
                                                   233 South Wacker Drive, Ste. 8000
                                                   Chicago, Illinois 60606
                                                   Telephone: (312) 460-5000
                                                   Facsimile: (312) 460-7000

                                                   Amanda L. Genovese (*pro hac vice*)
                                                   agenovese@seyfarth.com
                                                   SEYFARTH SHAW LLP
                                                   620 8th Avenue, 32nd Floor
                                                   New York, NY 10018
                                                   Telephone: (212) 218-5500
                                                   Facsimile: (212) 218-5526

                                                   *Attorneys for Defendant*
                                                   *UnitedHealthcare Insurance Company*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2026, the foregoing was filed with the Court's CM/ECF

system, which will send a notification of filing to all counsel of record:


/s/ Amanda L. Genovese
Amanda L. Genovese