**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HEALTHCARE JUSTICE COALITION, LLC, <br><br> Plaintiff, <br><br> v. <br><br> UNITEDHEALTHCARE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 1:26-cv-11001-JEK |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**AMENDED COMPLAINT**

Michael Steinberg, No. 690997
msteinberg@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210-2028
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

Amanda Lyn Genovese (*PHV*)
agenovese@seyfarth.com
SEYFARTH SHAW LLP
620 8th Avenue, 32nd Floor
New York, NY 10018
Telephone: (212) 218-5500

Jules A. Levenson (*PHV*)
jlevenson@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Ste. 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000

*Attorneys for Defendants*

**TABLE OF CONTENTS**

                                                                                    **Page**

I.      INTRODUCTION ........................................................................................... 1

II.     PLAINTIFF'S BUSINESS MODEL ............................................................... 2

III.    ALLEGATIONS AND FACTUAL BACKGROUND ....................................... 3

        A.      Plaintiff's Efforts To Obtain Additional Reimbursements Without Any
                Plausible Entitlement. ..................................................................... 3

        B.      The Disputed Benefit Claims. ........................................................... 4

        C.      Procedural History. ........................................................................... 5

IV.     ARGUMENT .................................................................................................... 6

        A.      Legal Standard. ................................................................................. 6

        B.      Multiple Federal Laws Preempt Plaintiff's Claims. .......................... 7

                1.      ERISA preempts Plaintiff's claims as to ERISA-governed plans. ............. 7

                2.      The Medicare Act requires dismissal of Plaintiff's MA Claims............... 10

        C.      Plaintiff's Claims Fail On The Merits. .............................................. 13

                1.      Plaintiff does not plausibly allege entitlement to benefits under
                        unjust enrichment/quantum meruit or implied-in-law contract
                        theories. ............................................................................... 13

                2.      Plaintiff's Chapter 176G § 5(f) claim fails. ............................... 17

                3.      Plaintiff's unfair practices claim fails. ...................................... 17

        D.      Plaintiff Did Not Properly Join UMR Or UHS As Defendants. ........... 18

V.      CONCLUSION ................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Orthopedics and Sports Med. Inst. v. Anthem Blue Cross Life and Health Ins. Co.*,
Civ. No. 17-8848 (MAS)(LHG), 2018 WL 6603650 (D.N.J. Dec. 14, 2018)........................15

*Air Sunshine, Inc. v. Carl*,
663 F.3d 27 (1st Cir. 2011)..................................................................................................7

*AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co.*,
142 F.4th 403 (6th Cir. 2025) ...................................................................................10, 14, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................6

*Aylward v. SelectHealth, Inc.*,
35 F.4th 673 (9th Cir. 2022) ..................................................................................11, 12, 13

*Barlow Respiratory Hosp. v. Cigna Health & Life Ins. Co.*,
No. 2:15-CV-08411-RKG-PLA, 2016 WL 7626446 (C.D. Cal. Sept. 30, 2016)....................15

*Beil v. Illinois Mun. League Risk Mgmt. Ass'n*,
No. 16-CV-356-JPG-PMF, 2016 WL 3999895 (S.D. Ill. July 26, 2016)...............................20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................6

*Boyle v. Int'l Truck And Engine Corp.*,
369 F.3d 9 (1st Cir. 2004)...................................................................................................18

*Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*,
Civ. No. 11-2775 (JBS/JS), 2012 WL 762498 (D.N.J. Mar. 6, 2012)....................................15

*Cellilli v. Cellilli*,
939 F. Supp. 72 (D. Mass. 1996) ...........................................................................................9

*Cynosure, Inc. v. St. Paul Fire & Marine Ins. Co.*,
Civil No. 08-11210-PBS, 2009 WL 949077 (D. Mass. Apr. 8, 2009), *rev'd on
other grounds*, 645 F.3d 1 (1st Cir. 2011) ...........................................................................18

*Danca v. Priv. Health Care Sys., Inc.*,
185 F.3d 1 (1st Cir. 1999)........................................................................................... passim

ii

*Ebersohl v. Bechtel Corp.*,
   No. CIV.09-1029-GPM, 2010 WL 2164451 (S.D. Ill. May 31, 2010) *modified*,
   No. CIV.09-1029-GPM, 2010 WL 2220590 (S.D. Ill. June 3, 2010) ....................................19

*Egelhoff v. Egelhoff ex rel. Breiner*,
   532 U.S. 141 (2001)...................................................................................................................7

*Emerus Hosp. Partners, LLC v. Health Care Serv. Corp.*,
   41 F. Supp. 3d 695 (N.D. Ill. 2014) ....................................................................................8, 10

*Finard & Co., LLC v. Sitt Asset Mgmt.*,
   945 N.E.2d 404 (Mass. App. Ct. 2011) ...................................................................................14

*Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*,
   30 F.4th 905 (9th Cir. 2022) ..............................................................................................12, 13

*Healthcare Just. Coal. DE Corp. v. Cigna Health & Life Ins. Co.*,
   No: 3:23-cv-01689 (KAD), 2025 WL 1424905 (D. Conn. May 15, 2025)........................14, 15

*Hogan v. Teamsters Loc. 170*,
   495 F. Supp. 3d 52 (D. Mass. 2020) .....................................................................................6, 10

*Hotz v. Blue Cross & Blue Shield of Mass., Inc.*,
   292 F.3d 57 (1st Cir. 2002).......................................................................................................9

*Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*,
   832 F.3d 1229 (11th Cir. 2016) ...............................................................................................11

*John Muir Health v. Health Care Serv. Corp.*,
   No. 22-cv-6963, 2023 WL 4707430 (N.D. Ill. July 24, 2023) .............................................8, 10

*Lowe v. Lincoln Nat'l Life Ins. Co.*,
   Civ. No. 19-31-HRW, 2019 WL 4891041 (E.D. Ky. Oct. 3, 2019), *aff'd on
   other grounds*, 821 F. App'x 489 (6th Cir. 2020) ......................................................................8

*Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*,
   117 N.E.3d 1155 (Ill. App. 2d 2018) .......................................................................................15

*Medicaid & Medicare Advantage Prods. Ass'n of Puerto Rico, Inc. v. Emanuelli
   Hernandez*,
   58 F.4th 5 (1st Cir. 2023).....................................................................................................11, 12

*Metro. Life Ins. Co. v. Taylor*,
   481 U.S. 58 (1987)......................................................................................................................7

*Mullane v. Portfolio Media, Inc.*,
   No. CV 19-11496-PBS, 2019 WL 12316202 (D. Mass. Nov. 19, 2019) ...........................19, 20

*Pharm. Care Mgmt. Ass'n v. Mulready*,
   78 F.4th 1183 (10th Cir. 2023) .....................................................................................12

*Rush Prudential HMO, Inc. v. Moran*,
   536 U.S. 355 (2002)........................................................................................................7

*Ryan v. Fallon Cmty. Health Plan, Inc.*,
   921 F. Supp. 34 (D. Mass. 1996) ....................................................................................9

*Salamon v. Terra*,
   477 N.E.2d 1029 (Mass. 1985) .....................................................................................14

*SM Med. Holdings Corp. v. Care Improvement Plus*,
   Civ. No. 24-6607 (ZNQ) (JBD), 2025 WL 2992399 (D.N.J. Oct. 24, 2025).........................13

*Spinal Imaging, Inc. v. Aetna Health Mgmt. LLC*,
   Civ. Nos. 09-11873-LTS, 12-11521-LTS, 2014 WL 1278012 (D. Mass. Mar.
   26, 2014) .......................................................................................................................8

*Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*,
   150 F. Supp. 2d 556 (S.D.N.Y. 2001)...........................................................................15

*Uhm v. Humana, Inc.*,
   620 F.3d 1134 (9th Cir. 2010) .........................................................................11, 12, 13

*Worldwide Aircraft Servs. Inc. v. Conn. Gen. Life Ins. Co.*,
   749 F. Supp. 3d 1204 (M.D. Fla. 2024)...........................................................................5

*Yacubian v. United States*,
   750 F.3d 100 (1st Cir. 2014)............................................................................................6

Defendants UnitedHealthcare Insurance Company ("UHIC"), UMR, Inc. ("UMR"), and United HealthCare Services, Inc. ("UHS") (collectively, Defendants), by and through their counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully request that the Court dismiss Plaintiff's First Amended Complaint ("FAC"), with prejudice.

## I.    INTRODUCTION

Plaintiff is not a healthcare advocate—it is a debt collector that sues on assigned receivables. The FAC reveals that Plaintiff acquired a portfolio of out-of-network provider ("OON Provider") claims, bundled them, and now seeks to extract millions of dollars from Defendants by repackaging those receivables as purported underpayments. Plaintiff has no plausible basis to demand that Defendants (which it contends insured or administered the OON Providers' patients' health benefit plans) reimburse benefits beyond the benefits already issued under the plans' conditional reimbursement methodologies. The Court should not permit Plaintiff's baseless attempt to recover additional plan benefits to which neither it nor its predecessors ever had any entitlement. Indeed, Plaintiff's FAC rests on the untenable premise that payors must reimburse a provider's full billed charges, even when the provider is out-of-network, certain services are not covered under the operative plan, and the provider has no contractual relationship with the payor.

Plaintiff asserts four claims: unjust enrichment/quantum meruit (Count I), breach of implied-in-law contract (Count II), violation of Mass. Gen. Laws c. 176G § 5(f) regarding the obligations of Healthcare Maintenance Organizations (Count III), and alleged unfair business practices under Mass. Gen. Laws c. 93A (Count IV). Plaintiff's claims all demand the "reasonable fair market rate value … as reflected in the bills submitted … by the [OON Providers]," *i.e.* the full amount of the OON Providers' billed charges. But because Plaintiff challenges benefits determinations under plans governed by the Employee Retirement Income Security Act ("ERISA") and the Medicare Act, the benefit claims are preempted and subject to dismissal.

1

Beyond this, Plaintiff fails to plausibly allege entitlement to any additional benefit payments under state law.  Plaintiff's quantum meruit/unjust enrichment and implied-in-law contract claims fail because (1) Defendants, as the insurers or administrators of the operative plans, had no duty to *treat* members, (2) the laws that Plaintiff relies on do not support an implied contract claim, and (3) Plaintiff fails to plausibly allege that Defendants received a benefit or requested the services at issue.  Plaintiff's statutory claims fare no better, as Plaintiff has not identified any statutory obligation to pay benefits at the OON Providers' billed charges.

One of the statutes that Plaintiff relies on (Mass. Gen. Laws c. 176G § 5(f)) only pertains to health management organizations ("HMO"), but Plaintiff has not plausibly alleged that any Defendant is an HMO.  Additionally, Plaintiff has not plausibly alleged (1) that paying benefit claims in accordance with the governing plans is an unfair practice and/or (2) that the additional benefits Plaintiff seeks are reasonable. Finally, to the extent that Plaintiff contends that UMR and/or UHS destroys diversity, it was required to seek leave of Court to assert claims against these companies.  Its failure to do so requires that the claims against them should be dismissed.

Accordingly, the Court should dismiss Plaintiff's  FAC in its entirety, with prejudice.

## II.    PLAINTIFF'S BUSINESS MODEL

Plaintiff is owned by eCure, LLC.  (FAC ¶ 6.)  eCure, LLC has since rebranded as Allia Group.[1]  Plaintiff/Allia Group describes its services to prospective clients as follows:[2]

- "[P]ioneering healthcare litigation finance platform enables providers to target underpaid insurance claims up to approximately six years old, depending on state law."

- "Want to discover what revenue your healthcare practice could recover from old A/R tied to insurer underpayments?"

- "Using proprietary data analysis and multidisciplinary expertise, Allia Group

---

[1] *See* 4/3/26 Declaration of Amanda L. Genovese ("4/3/26 Genovese Decl."), ECF No. 28,  ¶ 5, Ex. A).
[2] *See id.* ¶ 6, Ex. B.

> can find unrealized potential in many insurer claim underpayments and denials going back through years of data. Our healthcare litigation and recovery experts provide a comprehensive analysis of insurer receivables to find otherwise missed revenue recovery opportunities. Allia fuses together deep legal, RCM and finance experience in offering a turnkey solution."

Thus, Plaintiff seeks to litigate old accounts receivable, including benefit claims that are time-barred under benefit plans, including those governed by ERISA and Medicare. However, Plaintiff merely recasts disputes over benefit determinations made under the controlling plans. Without those plans and Defendants' administration of them, there would be no benefit claims.

## III.    ALLEGATIONS AND FACTUAL BACKGROUND

### A.    Plaintiff's Efforts To Obtain Additional Reimbursements Without Any Plausible Entitlement.

Plaintiff seeks $1.5 million based on more than 3,000 benefit claims allegedly assigned to it. (FAC ¶ 31; 4/3/26 Genovese Decl. ¶¶ 7–13.) Plaintiff asserts that its sole member, eCure, acquired these claims from the OON Providers under an August 1, 2023 assignment agreement, including any purported right to sue for unpaid or underpaid benefits. (FAC ¶ 6.[3])

As noted above, in promoting services to provider groups, Plaintiff/Allia Group asserts that it "begin[s] by analyzing your physician group's claims data to identify underpaid insurance claims with the highest recovery potential." (4/3/26 Genovese Decl., Ex. B.) Plaintiff/Allia Group also dedicates multiple website pages to the NSA, noting "[t]he No Surprises Act (NSA) introduced the federal Independent Dispute Resolution (IDR) process to resolve out-of-network payment disputes ... ." and that "Allia Group's managed IDR service provides physician groups with a seamless, data-driven approach to navigating the NSA's complex reimbursement process." (*Id.*)

Plaintiff alleges that the benefit claims pertain to emergency services allegedly provided at Holyoke Medical Center. (FAC ¶ 1.) Plaintiff contends that the services were provided on an out-

---

[3] Despite incorporating the agreement by reference, (FAC ¶ 6), Plaintiff did not attach it to the FAC.

of-network basis. (*Id*. ¶ 22.)  Plaintiff concedes that unlike in-network providers, the OON Providers *do not have a contract* with insurers or plan administrators, such as Defendants, regarding the adjudication, coverage, or reimbursement of benefits. (*Id*. ¶¶ 21–22.)  Nevertheless, Plaintiff/Allia Group positions its approach as helping secure better rates of payment, despite the lack of contractual rates and the terms of the operative plans themselves dictating coverage and reimbursement for out-of-network claims: "Litigation doesn't just aid in revenue recovery for physicians groups—it strengthens your position in payor contract negotiations to help secure better rates for your practice." (4/3/26 Genovese Decl., Ex. B.)

B.      **The Disputed Benefit Claims.**

On March 11, 2026, Plaintiff provided UHIC with a list of benefit claims at issue ("Claims List"). (4/3/26 Genovese Decl. ¶ 7.)  The Claims List includes certain data fields, including: "Patient Name," "Patient Date of Birth", "Patient Primary Insurance Subscriber ID," "Full Facility Name," "Group Name," "TIN," "Primary Insurance Name – External," "Date of Service," "Procedure Code,"  "Total Charges," "Allowed Amount," "Balance Due (Charges - Allowed)," and "Internal Patient Account Number." (*Id*.)  The date range of the benefit claims on the Claims List is 3/19/2018 to 8/11/2024 relating to one provider group TIN: (1) 43-1682326, Lakes/National Emergency Physicians Inc. (*Id*.)  Approximately 475 of the claims (*i.e.* 15% of the claims) pertains to dates of service *after* the date of the assignment agreement. (*Id.* ¶ 7.)

The Claims List contains approximately 3,000 claims, of which approximately 10% were zero-pay (i.e. the claims/services were denied in full). (*Id.* ¶ 8.)  Additionally, the Claims List identifies UMR as an operative payor—an entity that provides claims administration services to self-funded ERISA health benefit plans. (*Id.* ¶ 9.)  UMR is listed as the "Primary Insurance Name – External" for 1,241 benefit claims. (*Id.*)  The list contains one claim with a "-$253.00" balance, suggesting an overpayment made under an ERISA plan administered by UMR. (*Id.*)  For another

4

860 benefit claims, Plaintiff seeks $0.00 in "Balance Due (Charges – Allowed)." (*Id.*) Although Plaintiff disclaims bringing any claims under ERISA, (FAC ¶ 13), a significant percentage of the benefit claims (2,998 of the matched claims) are governed by that statute ("ERISA Claims"). (4/3/26 Genovese Decl. ¶ 13.) And seven matched claims are governed by Medicare Advantage plans ("MA Claims").[4] (5/29/26 Genovese Decl. (ECF No. 50) ¶ 15.) On April 16, 2026, Plaintiff served an Updated Claims List, which contained the same data fields as the Claims List, but with an "at issue" designation purporting to place certain claims on the list not "at issue." (5/29/26 Genovese Decl. (ECF No. 50) ¶¶ 12–13). Among the claims that Plaintiff concedes are at issue are over approximately 860 claims with $0 balance due. (*Id.* ¶ 10.)

The ERISA plans encompassing certain claims on the Claims List include those sponsored by large employers, such as Big Y Foods Inc., Sonoco Product Company, Liberty Mutual, and T-Mobile. (4/3/26 Genovese Decl. ¶ 13.) Defendants insures and/or administers certain of the benefit plans underlying the claims on Plaintiff's Claims List. (*Id.* ¶¶ 9, 13.) Over 1,000 of the claims have dates of service after the federal No Surprises Act ("NSA") effective date.[5] (*Id.* ¶ 7.)

### C.  Procedural History.

On December 29, 2025, Plaintiff filed this action in Suffolk Superior Court. (NOR ¶ 1.) Plaintiff asserts state-law claims alleging that UHIC underpaid the OON Providers by reimbursing them at less than the purported "reasonable value" of their services when adjudicating claims under UHIC-insured or -administered health benefit plans. (NOR ¶ 3.) Plaintiff's initial Complaint

---

[4] The Complaint does not disclaim any Medicare Act claims.

[5] The federal NSA was enacted as part of the Consolidated Appropriations Act, 2021 (H.R. 133), signed into law on December 27, 2020, effective January 1, 2022. 134 Stat. 2759. To the extent that Plaintiff or the OON Providers submitted a claim pursuant to the NSA, they cannot use state law to recover further. *See Worldwide Aircraft Servs. Inc. v. Conn. Gen. Life Ins. Co.*, 749 F. Supp. 3d 1204, 1217 (M.D. Fla. 2024) (in states without a law providing for method to determine amount payable, out-of-network rates is determined via IDR process or agreement between provider and insurer).

asserted four causes of action against UHIC: unjust enrichment/quantum meruit (Count I), breach of implied-in-law contract (Count II), violation of Mass. Gen. Laws ch. 176G, § 5(f) (Count III), and unfair trade practices under Mass. Gen. Laws ch. 93A (Count IV).  (Compl. ¶¶ 27–57.) On April 3, 2026, UHIC moved to dismiss. (ECF No. 27–29.) On April 16, 2026, Plaintiff filed its FAC, adding UMR and UHS, while maintaining the same four Counts (each asserted against all of the Defendants).  (ECF No. 27, 29; FAC ¶¶ 9, 10, 41–72.)  The FAC also added certain allegations regarding Defendants' reimbursement procedures.  (FAC ¶¶ 32–40.)

## IV.    ARGUMENT

### A.    Legal Standard.

Fed. R. Civ. P. 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2) does not require detailed factual allegations, but it requires "more than labels and conclusions, and a formulaic recitation of the elements[.]" *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  In deciding a motion to dismiss under Fed R. Civ. P. 12(b)(6), this Court must determine whether the "complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint failed to meet plausibility standard) (citations omitted).

"When 'a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'" *Hogan v. Teamsters Loc. 170*, 495 F. Supp. 3d 52, 58 (D. Mass. 2020); *Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014).  Courts "may properly consider the relevant entirety of a document *integral to or explicitly relied upon* in the complaint ... without converting the motion into one for summary judgment." *Hogan*, 495 F. Supp. 3d at 58 (emphasis in original, citations and internal quotation marks omitted).  The Court need not accept

6

"statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory. [Nor must it] accept … allegations that … are … so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir. 2011) (citations and internal quotation marks omitted).

### B.    Multiple Federal Laws Preempt Plaintiff's Claims.

#### 1.    *ERISA preempts Plaintiff's claims as to ERISA-governed plans.*

The Court should dismiss the FAC for all ERISA Claims[6] because Plaintiff may not use state law to interfere with plan administration, recover ERISA benefits and expand remedies. ERISA provides an exclusive federal cause of action for actions related to the recovery of benefits. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63 (1987); *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002). ERISA preempts state law claims that "relate to any employee benefit plan." 29 U.S.C. § 1144. Claims relate to a plan in two ways: claims that have a "reference to" an ERISA plan, and claims that have an impermissible "connection with" a plan. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001) ("law relates to an ERISA plan 'if it has a connection with or reference to such a plan'") (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)). Thus, "ERISA preempts, ... (1) laws that amount to 'alternative enforcement mechanisms' to those in ERISA § 502(a), and (2) laws that present the threat of conflicting and inconsistent regulation that would frustrate uniform national administration of ERISA plans." *Danca v. Priv. Health Care Sys., Inc.*, 185 F.3d 1, 6–7 (1st Cir. 1999) ("any state-law-based attack on ["conduct [that] was indisputably part of the process used to assess a participant's claim for a benefit payment under the plan"] would amount to an 'alternative enforcement mechanism' to

---

[6] The ERISA plans meet the relevant criteria of 29 U.S.C. § 1002(1) because the plans are established by employers to provide medical benefits. "ERISA Claims" also includes any unmatched claims related to ERISA plans. The Court should dismiss any/all such claims.

ERISA's civil enforcement provisions contained in ERISA § 502(a)") (citations omitted).

Accordingly, ERISA preempts "state claims to enforce rights under an ERISA plan or obtain damages for the wrongful withholding of those rights, and this construction has been repeatedly followed.  Thus, state law breach of contract, negligence, and Chapter 93A claims arising out of a failure to pay benefits under an ERISA plan are preempted." *Spinal Imaging, Inc. v. Aetna Health Mgmt. LLC*, Civ. Nos. 09-11873-LTS, 12-11521-LTS, 2014 WL 1278012, at *6 (D. Mass. Mar. 26, 2014) (citations omitted); *see also John Muir Health v. Health Care Serv. Corp.*, No. 22-cv-6963, 2023 WL 4707430, at *4 (N.D. Ill. July 24, 2023) (holding in context of complete preemption that provider's "claims … for breach of an implied-in-fact contract, and quantum meruit" were premised "on the alleged non-payments *or underpayments* by Defendants for medical services rendered to at least one ERISA plan beneficiary," such that the provider's entitlement to "damages depends on what benefits and payments are owed under the relevant ERISA plans") (emphasis added); *Emerus Hosp. Partners, LLC v. Health Care Serv. Corp.*, 41 F. Supp. 3d 695, 700 (N.D. Ill. 2014) (because provider lacked contract with insurer setting payment rate, "the parties dispute[d] the right to payment," such that state law statutory claim for usual and customary rate under was not independent of ERISA plan); *Lowe v. Lincoln Nat'l Life Ins. Co.*, Civ. No. 19-31-HRW, 2019 WL 4891041, at *2 (E.D. Ky. Oct. 3, 2019) (citing *Smith v. Provident Bank*, 170 F.3d 609, 613-617 (6th Cir. 1999) for the proposition that ERISA preempts common law claims for breach of contract, bad faith, misrepresentation, conversion, and negligence claims if they relate to employee benefit plan), *aff'd on other grounds*, 821 F. App'x 489 (6th Cir. 2020).

Plaintiff's causes of action have the requisite connection to ERISA plans for the ERISA Claims—the vast majority of the claims Plaintiff asserts, *see* 4/3/26 Genovese Decl. ¶ 13—because Plaintiff cannot use state statutory or common law to impose additional reimbursement obligations

8

on ERISA plans beyond the amount of coverage and beyond what the reimbursement methodology dictated in the relevant plan affords. *See Danca*, 185 F.3d at 7. Plaintiff alleges in Counts I and II that the OON Providers conferred benefits on Defendants by treating their insured members and that Defendants unjustly unenriched. (FAC ¶¶ 42, 45–47, 49, 53–55.) Likewise, Plaintiff's claim of unfair business practices (Count IV) under Mass. Gen. Laws c. 93A uses state law to attack Defendants' determinations in paying benefits. (*Id.* ¶¶ 66–72.) And Plaintiff's claim under Mass. Gen. Laws c. 176G § 5(a) (Count III) expressly relies on state law requiring HMOs to reimburse reasonable amounts for emergency services. (*Id.* ¶¶ 60–61.) In other words, Plaintiff seeks to use state law claims to impose additional reimbursement obligations on the benefit plans beyond what the plans determined was authorized under plan terms. Indeed, the FAC expressly attacks the operative plans' reimbursement methodologies. (*Id.* ¶¶ 32–40.) And these allegations are expressly incorporated into each of Plaintiff's substantive counts. (*Id.* ¶¶ 41, 49, 57, 66.) Not only is this an attempted end run around ERISA's civil enforcement mechanism, it directly attacks the benefits determinations—a central matter of plan administration and the claims are thus preempted by ERISA. *See Danca*, 185 F.3d at 7; *Hotz v. Blue Cross & Blue Shield of Mass., Inc.*, 292 F.3d 57, 61 (1st Cir. 2002) (affirming dismissal of c. 93A claim as preempted by ERISA).[7]

Similarly, Plaintiff's claims are dependent on the governing ERISA plans. Defendants

---

[7] To the extent that Plaintiff asserts that its claims in Count III are saved from preemption as based on a law governing insurance, *see* 29 U.S.C. § 1144(b)(2)(A), its claims still fail. For one, Plaintiff asserts benefit claims that pertain to self-funded plans for which Defendants and their affiliated entities provided only administrative services, (4/3/26 Genovese Decl. ¶ 13), so the savings clause is inapplicable, 29 U.S.C. § 1144(b)(2)(B) (self-funded plans cannot be deemed to be insurers). Additionally, c. 176G § 5(f) applies only to HMOs. *See Ryan v. Fallon Cmty. Health Plan, Inc.*, 921 F. Supp. 34, 38 (D. Mass. 1996) ("Chapter 176G is the state law which regulates HMOs and thus is specifically aimed at the HMO industry, not the general insurance industry as required by the *Pilot Life* decision."); c. 176G § 5(f) ("indemnity payment under this section shall not be subject to the insurance laws of the commonwealth"). *But see Cellilli v. Cellilli*, 939 F. Supp. 72, 78 (D. Mass. 1996) (holding that c. 176G § 5A was not preempted because it "directly duplicates a general insurance provision, section 1101, and is purposely aimed at the insurance industry"). Further, as discussed *infra*, Plaintiff has not plausibly alleged that *any* plan was an HMO.

were only allegedly obligated to make benefit determinations and/or payments on behalf of the members covered by the ERISA plans because of those plans.  Absent the ERISA plans, Defendants would have had no connection to the members/participants (OON Providers' patients) and thus no obligation to adjudicate claims or reimburse benefits for services covered by the plans. *See AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co.*, 142 F.4th 403, 408 (6th Cir. 2025) ("Start with the obvious proposition that uninsured patients are responsible for the full value of their care. Cigna only enters the picture if it contracts with patients to shoulder the burden of paying for their care.").  So even if Plaintiff had not mentioned the ERISA plans at all, their claims still would not exist independently of the ERISA plans. *See John Muir Health*, 2023 WL 4707430, at *4 (because "claims … for breach of an implied-in-fact contract, and quantum meruit" were premised "on the alleged non-payments or underpayments by Defendants for medical services," the provider's entitlement to "damages depends on what benefits and payments are owed under the relevant ERISA plans").[8]  Moreover, as discussed *infra* § IV.C, Plaintiff's claims for unjust enrichment and violation of Massachusetts laws covering HMOs require determining (1) whether Defendants were obligated to provide *care* (as opposed to reimbursing for services) and (2) whether any Defendant qualifies as an HMO as to any plan, both of which require interpreting the plan documents.  Thus, the state law causes of action are preempted as to all ERISA Claims.

### 2.    *The Medicare Act requires dismissal of Plaintiff's MA Claims.*

Plaintiff's cause of action for the MA Claims (*i.e.* the claims concerning Medicare-

---

[8] To the extent that Plaintiff contends that it is simply asserting a *rate* of payment claim, (*see* FAC ¶ 3), that is incorrect.  Plaintiff concedes, (FAC ¶¶ 21–22), that it did not have a contract with any Defendant, so the dispute here is regarding the right of payment. *Emerus*, 41 F. Supp. 3d at 700 (because provider lacked contract with insurer setting payment rate, "the parties dispute[d] the right to payment").  Additionally, over 850 of the at-issue claims involve an alleged balance due of $0, suggesting that Plaintiff is challenging some other aspect of the benefit determination. *See also Hogan*, 495 F. Supp. 3d at 58 (if "a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations") (internal quotation marks omitted).

governed plans) should be dismissed.  The Medicare Act gives Medicare beneficiaries the option to receive benefits in one of two ways.  An eligible person may participate in Medicare Parts A and B and have "CMS [the Centers for Medicare & Medicaid Services] directly pay medical providers for [her] hospital and outpatient care." *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1233 (11th Cir. 2016).  Alternatively, a Medicare enrollee may choose to participate in a Medicare Part C plan, known as a Medicare Advantage plan, and have a Medicare Advantage Organization ("MAO"), like UHIC—rather than CMS—provide benefits.  *See id.* Congress ensured uniformity of this nationwide program by expressly preempting any state laws or causes of action that relate to, challenge, or regulate MAOs' compliance with Medicare standards.  *See* 42 U.S.C. § 1395w-26(b)(3); 42 C.F.R. § 422.402; 70 Fed. Reg. at 4665.

The Medicare Act "supersede[s] any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations," 42 U.S.C. § 1395w-26(b)(3), "including those established through case law," 70 Fed. Reg. at 4665, state "common law," and statutory claims, *Uhm v. Humana, Inc.*, 620 F.3d 1134, 1156 (9th Cir. 2010).  Indeed, "the Medicare Advantage Act's preemption clause does what it purports to do: it extends preemption to any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans[,]" such that states cannot regulate pricing for services provided under Medicare Advantage plans *Medicaid & Medicare Advantage Prods. Ass'n of Puerto Rico, Inc. v. Emanuelli Hernandez*, 58 F.4th 5, 13–14 (1st Cir. 2023) (holding that "whatever preemption terminology is used, the Mandated Price Provision [in Puerto Rico law] is preempted by the plain language of the Medicare Advantage Act's express preemption clause") (internal quotation marks omitted); *see also Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 681 (9th Cir. 2022) (Medicare Act preempts "any state law

duty that would impose obligations on MA plans on th[e] same subject" as relevant Medicare Act regulations "whether or not [such claims] would be inconsistent with federal regulations."); *Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1206 (10th Cir. 2023) (Medicare Act's preemption provision is broad and mandates something "akin to field preemption."). Further, a claim is "inextricably intertwined" with a claim for Medicare benefits if it does not involve issues separate from a party's claim that it is entitled to benefits. *Uhm*, 620 F.3d at 1141–43 (breach of contract claim and unjust enrichment claim arose under the Medicare Act because they were "at bottom, creatively disguised claims for benefits"); *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 919 (9th Cir. 2022) (consumer-protection claim rested "directly on the interpretation of benefits provided under Kaiser's Medicare Advantage plans" because, on plaintiffs' theory, Kaiser's failure to pay benefits would violate its Medicare Act obligations)

Plaintiff's claims seeks to use state law to define the benefit levels (and upend payment determinations) for MA Claims, which the Medicare Act prohibits. *Emanuelli Hernandez*, 58 F.4th at 13–14 (holding that state law setting Medicare Advantage reimbursement rates was preempted). Plaintiff attempts to avoid these regulations by demanding reimbursement for out-of-network services using state law causes of action untethered from operative Medicare laws, rules, and regulations. That is precisely what the Medicare Act's preemption provision prohibits. *Id.; Aylward*, 35 F.4th at 681. Indeed, Plaintiff's claims seek to obtain additional benefits either in accordance with the Medicare Advantage plans or beyond that which the plans require. This is an impermissible use of state law causes of action. *Emanuelli Hernandez*, 58 F.4th at 13–14; *see also Uhm*, 620 F.3d at 1143 (breach of contract claim premised on alleged failure "to provide prescription drug benefits as promised" and unjust enrichment claim alleging receipt of "monies as a result of payments made by [the plaintiffs] for prescription drug benefits that Humana failed to provide" arose

12

under the Medicare Act because they were "at bottom, … creatively disguised claims for benefits"); *Aylward*, 35 F.4th at 681 ("because the standards established under [Medicare] Part C expressly prescribe the relevant duties of MA plans … those standards 'supersede' any state law duty that would impose obligations on MA plans on that same subject"). Moreover, non-contracted providers, like the OON Providers here, that treat Medicare Advantage patients must accept as payment in full the amount that would be paid under Medicare and Medicare Advantage plans are obligated to pay the Medicare-approved rate. *See Glob. Rescue Jets*, 30 F.4th at 910 ("If [certain] services would have been covered under [Medicare] Parts A and B, the [MA] plan is obligated to pay these 'non-contracted providers' at least the Medicare-approved rate, and the non-contracted provider is obligated to accept the Medicare-approved rate as payment in full.") (citations omitted). Plaintiff's demand for benefits at billed charges contradicts the Medicare Act and Medicare laws, rules, and regulations.[9]

### C.    Plaintiff's Claims Fail On The Merits.

#### 1.    *Plaintiff does not plausibly allege entitlement to benefits under unjust enrichment/quantum meruit or implied-in-law contract theories.*

The Court should dismiss Plaintiff's quantum meruit/unjust enrichment and implied-in-law contract claims because Plaintiff fails to plausibly allege any entitlement to recovery. "A quasi contract or a contract implied in law is an obligation created by law 'for reasons of justice, without

---

[9] Plaintiff also fails to plausibly allege exhaustion as to any of the MA claims, providing a further basis for dismissal. *Uhm*, 620 F.3d at 1140 (9th Cir. 2010) (noting that "the Supreme Court has held that the exhaustion requirement of [42 U.S.C.] § 405(g) consists of a non-waivable requirement that a claim for benefits shall have been presented to the Secretary, and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant" and that "[o]nly once the Secretary has issued a final decision may the individual seek judicial review of that determination.") (internal quotations and citations omitted); *SM Med. Holdings Corp. v. Care Improvement Plus*, Civ. No. 24-6607 (ZNQ) (JBD), 2025 WL 2992399, at *2 (D.N.J. Oct. 24, 2025) (account stated claim to recover unpaid amount of bill for ambulance services was "inextricably intertwined with claims for benefits under Part C of the Medicare Act. The claim therefore 'arises under' the Act and is subject to Part C's mandatory administrative exhaustion requirement."). To the extent that the Court were to conclude that Plaintiff's failure to exhaust the Medicare Act claims deprives it of jurisdiction, any dismissal would be pursuant to Fed. R. Civ. P. 12(b)(1).

any expression of assent and sometimes even against a clear expression of dissent....
[C]onsiderations of equity and morality play a large part ... in constructing a quasi-contract....' It
'is not really a contract, but a legal obligation closely akin to a duty to make restitution.' 'A person
who has been unjustly enriched at the expense of another is required to make restitution to the
other.'" *Salamon v. Terra*, 477 N.E.2d 1029, 1031 (Mass. 1985) (citations omitted). "To achieve
recovery upon the theory of quantum meruit, the claimant must prove (1) that it conferred a
measurable benefit upon the defendants; (2) that the claimant reasonably expected compensation
from the defendants; and (3) that the defendants accepted the benefit with the knowledge, actual
or chargeable, of the claimant's reasonable expectation. *Finard & Co., LLC v. Sitt Asset Mgmt.*,
945 N.E.2d 404, 407–08 (Mass. App. Ct. 2011).

Plaintiff cannot meet these elements. *First*, Defendants received no benefit, a fact that
forecloses Plaintiff's claim. Plaintiff alleges that the OON Providers conferred a benefit on
Defendants' by providing medical services, which satisfied Defendants' alleged "legal obligations
to provide emergency medical services to [their] members." (FAC ¶ 42.) But Plaintiff points to
no statute or other authority requiring Defendants to provide medical *services*. Indeed, as Plaintiff
concedes, Defendants had an obligation to provide *coverage* for certain *covered* services. (*Id*.)
That is not an obligation to provide services. *See, e.g.*, *AMISUB*, 142 F.4th at 409–10 (Affordable
Care Act provision "requiring insurers to provide 'coverage' for … emergency services … does
not impose a duty on insurers to cover the full cost of their members' out-of-network emergency
care"). Accordingly, numerous courts have held that only the patient—not an insurer—obtains a
benefit when insureds receive care. *See Healthcare Just. Coal. DE Corp. v. Cigna Health & Life
Ins. Co.*, No: 3:23-cv-01689 (KAD), 2025 WL 1424905, at *5 (D. Conn. May 15, 2025)
(dismissing claim with prejudice *by Plaintiff's affiliate* because "like unjust enrichment, quantum

14

meruit requires that the defendant received some benefit from the plaintiff. That is the same element that the Court has concluded HJC has failed to plead in the unjust enrichment context."). Certainly, "it would misunderstand the nature of insurance to suggest that doctors are fulfilling an insurer's obligation by providing care … because the insurer's obligation is to cover medical expenses, not to provide treatment." *Id.* (physicians did "not … confer[] a benefit on [insurer] by treating its members," so HJC did "not plausibly allege[] … an unjust enrichment claim"); *Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*, 117 N.E.3d 1155, 1161 (Ill. App. 2d 2018), ¶17 (holding under Illinois law that "providers … failed to state a cause of action for breach of contract implied in law" because "the complaint alleges no facts specifying the benefit the providers bestowed on defendants; they provided a benefit—namely, medical services—only to the injured employee"); *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, Civ. No. 11-2775 (JBS/JS), 2012 WL 762498, at *8-9 (D.N.J. Mar. 6, 2012); *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001); *Advanced Orthopedics and Sports Med. Inst. v. Anthem Blue Cross Life and Health Ins. Co.*, Civ. No. 17-8848 (MAS)(LHG), 2018 WL 6603650, at *4 (D.N.J. Dec. 14, 2018) (medical provider's "quantum meruit claim is subject to dismissal because the benefit at issue was conferred upon [the patient], not the [insurer].").

*Second*, Plaintiff does not plausibly allege that Defendants accepted any benefit with knowledge of Plaintiff's reasonable expectation. For one, Plaintiffs have not plausibly alleged that Defendants had *any* knowledge of *any* medical service before such services were rendered, as the patients, not any Defendant, sought the services in question. *See Barlow Respiratory Hosp. v. Cigna Health & Life Ins. Co.*, No. 2:15-CV-08411-RKG-PLA, 2016 WL 7626446, at *3 (C.D. Cal. Sept. 30, 2016) ("It is undisputed that Defendant did not request that [p]laintiff provide C.S. with medical services. Rather, C.S. requested medical services from [p]laintiff, who then

15

contacted [d]efendant to verify C.S.'s coverage eligibility." (internal citations omitted)).  Plaintiff alleges, (FAC ¶ 43), that Defendants accepted the services by paying for them, but this ignores that Defendants were obligated to pay certain claims under the relevant benefit plans (either as the insurer or as the administrator of self-funded plans).  Plaintiff offers no allegation as to how Defendants could demonstrate acceptance of a benefit by performing a contractual obligation.  As Plaintiff concedes, Defendants did not reimburse benefits at the billed charge.  Similarly, Plaintiff does not allege that the OON Providers expected coverage and benefit payments from Defendants at the time services were rendered.  As the Sixth Circuit noted in *AMISUB*, if a patient has no insurance (or seeks treatment beyond the limits of the insurance contract), the patient, not the insurer, is responsible to pay.  142 F.4th at 408 ("Start with the obvious proposition that uninsured patients are responsible for the full value of their care.  Cigna only enters the picture if it contracts with patients to shoulder the burden of paying for their care.").  Thus, the OON Providers could only reasonably expect benefit payments from an insurer if it knows that the patient is covered by a plan insured or administered by the insurer/administrator.  But as Plaintiff concedes, emergency room physicians must stabilize *all* patients, regardless of insurance.  (FAC ¶ 51.)  Plaintiff alleges no facts to allow an inference that the OON Providers expected benefit payments *from Defendants*.

*Third*, to the extent that Plaintiff's implied-in-law contract claim differs from its unjust enrichment/quantum meruit claim, it fails because Plaintiff does not plausibly allege any law that requires Defendants to pay billed charges.  Plaintiff cites Mass. Gen. Laws c. 175 § 47U, (FAC ¶ 26), but that provision only requires *coverage* for certain emergency services, not any particular rate.  Plaintiff also cites Mass. Gen. Laws c. 176G § 5(f), (FAC ¶ 30), but that provision—which requires payment of a "reasonable amount charged for the cost of emergency medical services"— only applies to HMOs, *i.e.* an entity that "provides or arranges for the provision of health services,"

16

Mass. Gen. Laws c. 176G § 1.  As discussed *infra* § IV.C.2, however, Plaintiff does not plausibly allege that any Defendant functioned as an HMO.  Indeed, UMR provides only administrative services; it does not act as an insurer at all.  Furthermore, even if Defendants *were* obligated to pay a "reasonable" amount, Plaintiff fails to plausibly allege that the billed charges were reasonable.  Though Plaintiff includes a conclusory allegation, (FAC ¶ 52), it offers no facts about the nature of the services rendered to support that conclusory allegation.  Plaintiff offers no facts at all about its services beyond the data contained in the Claims List.  Accordingly, Counts I and II fail.

### 2. *Plaintiff's Chapter 176G § 5(f) claim fails.*

The Court should reject Plaintiff's efforts to apply HMO laws to non-HMOs.  Count III, (FAC ¶¶ 57–65), alleges that Defendants violated Mass. Gen. Laws c. 176G § 5(f) by not making "reasonable" payments for services rendered by the OON Providers.  But § 5(f) only applies to HMOs and Plaintiff fails to plausibly allege that any Defendant functioned as an HMO.  An HMO is an entity that, *inter alia*, "provides or arranges for the provision of health services to voluntarily enrolled members in exchange primarily for a prepaid per capita or aggregate fixed sum."  Mass. Gen. Laws c. 176G § 1.  Plaintiff offers no allegations allowing an inference that UHIC meets this definition.  Not only do 2,507 of the matched benefit claims—including all claims administered by UMR—pertain to plans where only administrative services were provided (*i.e.* no Defendant acted as an insurer at all), Plaintiff alleges no facts suggesting that any Defendant was obligated to provide *care*.  Nor does Plaintiff allege facts that allow an inference that any Defendant's obligations were "in exchange *primarily* for a prepaid per capita or aggregate fixed sum."  Mass. Gen. Laws c. 176G § 1 (emphasis added).  Nor does Plaintiff offer any non-conclusory allegations about the reasonableness of the benefits it seeks.  Accordingly, Count III fails.

### 3. *Plaintiff's unfair practices claim fails.*

"[A] chapter 93A claimant must show that the defendant's actions fell 'within at least the

penumbra of some common-law, statutory, or other established concept of unfairness,' or were 'immoral, unethical, oppressive or unscrupulous,' and resulted in 'substantial injury ... to competitors or other business[persons].' " *Boyle v. Int'l Truck And Engine Corp.*, 369 F.3d 9, 15 (1st Cir. 2004). "An insured party is unlikely to prevail on a Chapter 93A claim against an insurer unless the insurer denied coverage based on an implausible interpretation of the policy." *Cynosure, Inc. v. St. Paul Fire & Marine Ins. Co.*, Civil No. 08-11210-PBS, 2009 WL 949077, at *2 (D. Mass. Apr. 8, 2009), *rev'd on other grounds*, 645 F.3d 1 (1st Cir. 2011).

Plaintiff alleges that Defendants' purported failure to pay the OON Provider's "reasonable" charges is an unfair practice. (FAC ¶ 69.) But the only statute that Plaintiff cites to is c. 176, § 5(f). (*Id.*) And, as noted *supra*, that statute only applies to HMOs and Plaintiff has failed to plausibly allege (1) that any Defendant functioned as an HMO or (2) that the benefits reimbursed subject to the plans were, in fact, unreasonable. Nor has Plaintiff not cited any other statute or other obligation requiring that UHIC pay a particular amount or deviate from the plans' reimbursement terms. At base, Plaintiff's allegations are that Defendants committed an unfair trade practice by *following the terms* of the applicable plans in reimbursing covered benefits. And Plaintiff seeks to do so *without providing details* about the benefit claims beyond the type of claim, the amount billed, and amount paid. This is nowhere near a plausible allegation.

### D.        Plaintiff Did Not Properly Join UMR Or UHS As Defendants.

The Court should also dismiss UMR and UHS to the extent that they would destroy diversity because Plaintiff did not seek leave of Court to join them. Fed. R. Civ. P. 15(a)(1)(B) allows amendment within 21 days of a motion under Fed. R. Civ. P. 12. However, 28 U.S.C. § 1447(e) provides that where a post-removal joinder "would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action." Accordingly, "most courts agree that plaintiffs cannot destroy diversity through amendment as a matter of right. Instead,

18

courts have concluded that when a plaintiff adds a non-diverse defendant following removal, §

1447(e) applies even if the amendment would otherwise be permissible as a matter of course under

Rule 15(a)(1)." *Mullane v. Portfolio Media, Inc.*, No. CV 19-11496-PBS, 2019 WL 12316202, at

*7, 11 (D. Mass. Nov. 19, 2019) (denying joinder) (citations and internal quotation marks omitted).

If a plaintiff seeks such an amendment, it bears the burden of providing that the amendment

would be permissible. *Id.* at * 8 (collecting cases); *Ebersohl v. Bechtel Corp.*, No. CIV.09-1029-

GPM, 2010 WL 2164451, at *4 (S.D. Ill. May 31, 2010) (directing parties to brief whether

amendment was permissible and that plaintiff "will have the burden of proving by a preponderance

of the evidence that the joinder … is proper under … § 1447(e)") *modified*, No. CIV.09-1029-

GPM, 2010 WL 2220590 (S.D. Ill. June 3, 2010).  And this Court would look to "the extent to

which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been

dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is

not allowed, and any other factors bearing on the equities." *Mullane*, 2019 WL 12316202, at *9.

Here, Plaintiff pleads that UHS is a Minnesota corporation (and thus a citizen of

Minnesota).  (FAC ¶ 10.)  And Plaintiff has claimed to be a Minnesota citizen in other litigation.

(*See* ECF No. 50 at 7 ¶ 7, *id.* at 11 ¶ 2(d)(iv) (both disclosing an Allia 770 Ventures member with

Minnesota citizenship).)  Additionally, the FAC (¶ 13) disclaims diversity.  Accordingly, Plaintiff

likely takes the position it is not completely diverse from UHS and/or UMR.  Although Defendants

dispute that conclusion as noted in UHIC's opposition to Plaintiff's remand motion, *see* ECF No.

49 (internal pagination) at 6–11, and Plaintiff has not sought remand on that basis,[10]  this does not

---

[10] The alleged Minnesota citizen is (1) purportedly a member of Allia 770 and (2) apparently became a member shortly before or after the initial Complaint was filed.  *Compare* ECF No. 3-4 (Ex. D) ¶ 2(d) (10/31 disclosure noting Indiana and Kentucky members), *with* ECF No. 50 at 7 ¶ 7 (2/27/26 declaration noting Minnesota member).  Accordingly, he should be disregarded for jurisdictional purposes as set forth in UHIC's remand opposition (ECF No. 49) (internal pagination) at 6–11.

excuse Plaintiff's obligation to seek leave.  Moreover, although "requests for leave to amend can be informal," *Mullane*, 2019 WL 12316202, Plaintiff has not raised the issue.

Additionally, the Court should deny leave in any case.[11]  Plaintiff asserts no basis for leave and the timing of the FAC—one day before seeking remand—reflects an effort to avoid federal court.  Although Plaintiff amended after UHIC moved to dismiss, Plaintiff has obtained no discovery and the FAC reflects no new information about the new Defendants aimed at fixing the deficiencies noted in UHIC's motion.  *See Mullane*, 2019 WL 12316202, at *9, 10 (amendment "with little intervening discovery, may represent 'tactical maneuvers'" such that lack of evidence that plaintiff learned anything new requiring amendment plus rapid amendment after removal counsel suggested "desire to destroy diversity jurisdiction").  Indeed, the initial Claims List— incorporated by reference in the initial Complaint—listed UMR as the "Primary Insurance Name" for 1,241 claims—over 1/3 of the list.  (4/3/26 Genovese Decl. ¶ 9.)  Plaintiff needn't have waited for removal to join UMR.  Similarly, Plaintiff cannot assert that it would be prejudiced by denial of amendment.  Finally, the background in UHIC's remand opposition counsels against leave. eCure created Allia 770—an entity controlled by eCure—and purported to rapidly add members across the country (with no evidence of consideration) who happen to share citizenship with the entities Plaintiff is suing.  *See* ECF No. 49 at 6–11.  And it did so contemporaneously with filing litigation against newly non-diverse defendants.  The Court should dismiss UMR and UHS.  *See Beil v. Illinois Mun. League Risk Mgmt. Ass'n*, No. 16-CV-356-JPG-PMF, 2016 WL 3999895, at *3 (S.D. Ill. July 26, 2016) (dismissing defendant "[t]o cure … unauthorized joinder").

## V.    CONCLUSION

For the foregoing reasons, the  FAC should be dismissed, with prejudice.

---

[11] If Court agrees with UHIC as to non-diversity jurisdictional grounds, leave would be unnecessary.

20

Dated:  June 16, 2026

Respectfully submitted,

**SEYFARTH SHAW LLP**

By:  */s/ Amanda L. Genovese*
    Michael Steinberg, No. 690997
    msteinberg@seyfarth.com
    SEYFARTH SHAW LLP
    Two Seaport Lane, Suite 1200
    Boston, Massachusetts 02210-2028
    Telephone: (617) 946-4800
    Facsimile: (617) 946-4801

    Amanda Lyn Genovese (*PHV*)
    agenovese@seyfarth.com
    SEYFARTH SHAW LLP
    620 8th Avenue, 32nd Floor
    New York, NY 10018
    Telephone: (212) 218-5500

    Jules A. Levenson (*PHV*)
    jlevenson@seyfarth.com
    SEYFARTH SHAW LLP
    233 South Wacker Drive, Ste. 8000
    Chicago, Illinois 60606
    Telephone: (312) 460-5000

    *Attorneys for Defendants*

21

## CERTIFICATE OF SERVICE

I hereby certify that, on June 16, 2026, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*/s/ Amanda L. Genovese*
Amanda L. Genovese