UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HEALTHCARE JUSTICE COALITION, LLC,

       Plaintiff,

v.

UNITEDHEALTHCARE INSURANCE COMPANY, UMR, INC. and UNITED HEALTHCARE SERVICES, INC.,

       Defendants.

_____ /

Civil Action No.: 1:26-cv-11001-JEK

**(Leave to File Granted on July 9, 2026)**

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS <u>MOTION TO REMAND</u>

POLLACK SOLOMON DUFFY LLP
Phillip Rakhunov (BBO #663746)
John N. Yokow (BBO #694372)
31 St. James Ave., Suite 830
Boston, MA 02116
(617) 439-9800
prakhunov@psdfirm.com
jyokow@psdfirm.com

*Counsel for Plaintiff*

Plaintiff Healthcare Justice Coalition, LLC ("HJC") respectfully submits this reply brief in further support of its motion to remand.

### Introduction

Defendant, United Healthcare Insurance Company ("United"), persists in its "kitchen sink" approach in an effort to manufacture a colorable basis for an invocation of federal jurisdiction. In a well-worn pattern of strategic delay, United refuses to accept HJC's well-pled (and substantiated) allegations of citizenship and continues to rely on boilerplate preemption arguments which have been repeatedly rejected nationwide.

The corporate documents and sworn declarations referenced herein demonstrate that there is no legitimate dispute as to HJC's Connecticut citizenship prior to the inception of this action. Further, United's ERISA preemption argument mischaracterizes the nature of this dispute, ignoring that HJC's claims do not rely upon and are entirely independent of any patient assignments of benefits. In addition, United simply refuses to acknowledge that HJC's complaint disclaims all Medicare Advantage claims, zero-balance and zero-pay claims.

Accordingly, United lacked any objectively reasonable basis for removing this matter, which should be remanded and HJC should be awarded its just costs and attorneys' fees associated with United's baseless removal.[1]

---

[1] Throughout its opposition, United makes reference to a finding of complete diversity it obtained in *Healthcare Just. Coal. NJ, LLC v. UnitedHealth Grp., Inc. ("HJC NJ")*, 2026 WL 851242, at *3 (D.N.J. Mar. 27, 2026), to suggest that this Court should draw inferences as to HJC's "structuring tactics." That case, however, involved an entirely sperate and distinct corporate entity and circumstances readily distinguishable from those at bar.

**Argument**

**I.       There is No Dispute That HJC Is a Citizen of Connecticut.**

In its opposition, United concedes that the dispositive issue for purposes of diversity jurisdiction is whether HJC is a citizen of Connecticut and does not dispute the settled law that HJC shares the citizenship of each of its direct and indirect members. United refuses, however, to accept the plain fact that Boruch Ceitlin, a member of HJC's downstream member, is a citizen of Connecticut or that his admission as a member comported with the LLC agreement and Delaware law. Instead, United relies on far-fetched arguments that Ceitlin's membership may be disregarded entirely. That argument is flawed because there can be no legitimate dispute that HJC was a citizen of Connecticut based on Ceitlin's membership in Allia 770 Ventures LLC, at all relevant times.

**a.  As alleged in the Complaint, Ceitlin Is a Citizen of Connecticut.**

First, HJC has submitted with its opening papers a declaration of Mr. Ceitlin and a copy of the effective joinder agreement establishing Ceitlin's Connecticut citizenship and, therefore, his domicile. (*See* ECF 38-1 & 38-2). Indisputably, the joinder agreement that identifies Ceitlin's address in Connecticut predates the filing of the initial complaint in this action. United has not produced *any evidence* contradicting or even calling into question Ceitlin's Connecticut citizenship. Accordingly, HJC has sufficiently established Ceitlin's Connecticut citizenship.

**b.  Ceitlin Was Duly Added as a Member of Allia 770 Ventures LLC.**

Second, for the first time in its opposition, United incorrectly speculates that Ceitlin might not have been properly admitted as a member of Allia 770 Ventures LLC as required by Delaware law. This incorrect speculation is easily dispelled by reference to the executed joinder agreement (*see* ECF 38-2) and the operative LLC Agreement. (*See* Exhibit A).

Ceitlin's admission as a member of Allia 770 Ventures LLC ("Allia") strictly complied with the procedural requirements set forth in the entity's governing documents. Under Section 6.2 of the Limited Liability Company Agreement, a new member is formally admitted upon satisfaction of two conditions: (1) the prior written approval of the Managing Member, and (2) the execution and delivery of a written Joinder Agreement in the form attached to the operating agreement. *Id*. The joinder agreement submitted in support of HJC's motion to remand confirm that both requirements were met as of December 1, 2025. (*See* ECF 38-2). Ceitlin executed the exact Form of Joinder Agreement required by the LLC Agreement, binding himself to the terms of the LLC Agreement. *Id*. Concurrently, eCure, LLC (in its capacity as Allia's Managing Member) executed its written acceptance and formal approval of the joinder. Following this mutual execution, Allia updated its Schedule of Members to reflect Ceitlin as the owner of record of 10 Units.[2]

Accordingly, Ceitlin was a duly admitted member of HJC's downstream member, Allia 770 Ventures, LLC at all relevant times.[3]

### c. United's Reliance on "Collusive Partial Assignments" is Inappropriate.

Third, United's argument that Ceitlin's membership constitutes a "collusive partial assignment" is flawed and the authorities on which United relies are inapposite.

---

[2] As United concedes, the default rules codified in Del. Code tit. 6, § 18-301(b)(1), particularly those requiring unanimous consent of all existing members, do not apply where the LLC agreement explicitly provides the mechanism for admission of new members as it does here.

[3] United also attempts to manufacture an issue out of what it frames as HJC's "circular" or anomalous membership structure. To do so, United suggests that eCure is a "member of its own member," Allia. Aside from failing to articulate any bearing it may have on the jurisdictional issue before the Court, United mischaracterizes eCure's role as Allia's "Managing Member." (See ECF 38-2). There is no dispute on the record that, while referred to as the "Managing Member," eCure holds zero membership units in Allia and therefore functions as a manager, rather than a member. *Id*.

As predicted in HJC's opening papers, United primarily relies on two inapplicable cases for the proposition that this Court may disregard *a partial assignment of claims* intended to destroy diversity jurisdiction. *See JMTR Enterprises, L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 92 (D. Mass. 1999); *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990). This case, however, does not involve jurisdictional positions premised on any assignments, partial or otherwise. Rather, one of HJC's downstream members duly added a Connecticut member before filing the complaint, which is properly considered in a jurisdictional analysis. *See Pearson Air Constr., LLC v. PCL Constr. Servs., Inc.*, No. 23-cv-002258, 2024 WL 3634914, at \*4 (D. Colo. March 18, 2024). Undeterred by caselaw, United argues that *Pearson* is somehow inapplicable because HJC's "asserted basis for lack of diversity is the purported transfer of a fractional membership interest (worth $0) in a tertiary LLC under eCure's control." (ECF 49 at 10-11). United cites no authority to support this proposition, because none exists, and fails to address the Supreme Court's holding in *Carden v. Arkoma Associates*, 494 U.S. 185, 192 (1990), "reject[ing] the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members."

Accordingly, Ceitlin's citizenship must be considered for purposes of diversity jurisdiction regardless of United's unsubstantiated allegation of some (non-existent) assignment.

## II.     ERISA Preemption Does Not Apply to this *Rate of Payment* Dispute.

The Supreme Court's two-prong test in *Davila* requires that *both* prongs be met for ERISA to completely preempt a state law claim: (1) the plaintiff must have been able, at some point in time, to have brought its claim under Section 502(a)(1)(B) of ERISA; and (2) there must be no legal duty independent of ERISA or the plan terms implicated by a defendant's actions. *Aetna*

*Health Inc. v. Davila*, 542 U.S. 200 (2004). United's Notice of Removal and its opposition fail to establish that removal was proper under either prong.

### a.  Purported Assignments of Benefits Do Not Confer Standing.

United's primary argument on the first *Davila* prong is that HJC's predecessor-in-interest obtained assignments of patients' ERISA plan benefits because two electronic 837 claim forms submitted to United contain a "Y" in the "BENEFITS ASSIGNED TO PROVIDER/PAY PROVIDER" field. This argument fundamentally misunderstands both the nature of these billing designations and the nature of HJC's claims.

First, a "Y" in the assignment-of-benefits field on a standard electronic claim form is a routine billing designation that authorizes direct payment to the provider—it is not a legally operative assignment of the patient's right to sue for plan benefits under ERISA. The assignment-of-benefits designation on a 837 claim form simply directs the plan to pay the provider directly rather than reimbursing the patient, a standard industry practice that has nothing to do with transferring the patient's right to bring a cause of action under ERISA § 502(a)(1)(B). In fact, United's reliance on this billing convention to invoke federal jurisdiction is nearly identical to the argument that the Seventh Circuit rejected in *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 597–98 (7th Cir. 2008). There, the Seventh Circuit held the first *Davila* prong was not satisfied because the provider was not bringing claims under an assignment of benefits, but instead entirely in its own right. *Id.* at 597. "Simply because at one point in time Franciscan Skemp acknowledged an assignment from [the insured] does not mean that it simultaneously and implicitly gave up any claim(s) it had against Central States apart from that assignment." *Id.* at 598. Just as in *Franciscan Skemp*, HJC is "bringing its own

independent claims, and these claims are simply not claims to 'enforce the rights under the terms of the plan.'" *Id.*

Second, the two exemplar policies United selected and placed before the Court undercut, rather than support, its attempt to manufacture ERISA preemption. United relies on claim forms reflecting that "benefits [were] assigned to provider/pay provider," but the governing plan language confirms that this is, at most, a direct-payment authorization, not an operative assignment of the patient's right to sue under ERISA § 502(a)(1)(B).

For example, the Sonoco plan produced by United provides that an insured may assign benefits to a non-network provider only "with UnitedHealthcare's consent," and that, to be recognized as a valid assignment, the assignment must reflect the covered person's agreement that the provider receives all of the covered person's rights under the plan and applicable law, including legally required notices and procedural-review rights, and that the covered person no longer retains those rights. *See* Exh. C to Declaration of Jane Stalinski (ECF 51). If an assignment does not satisfy those requirements and merely directs payment to the provider, United may pay the provider for the member's convenience, but will still treat the member, not the provider, as the beneficiary of the claim. *Id*. Thus, United's own exemplar plan documents distinguish a direct-payment instruction from a valid assignment of plan rights.[4]

---

[4] Although the two hand-selected policies United relies on do not appear to contain express anti-assignment clauses beyond the language requiring United's consent, HJC notes that such anti-assignment clauses are commonplace and would further undercut United's position. *See McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017) (citing, *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004) ("[W]e are persuaded by the reasoning of the majority of federal courts that have concluded that an assignment is ineffectual if the [ERISA benefit] plan contains an unambiguous anti-assignment provision.") (collecting cases).").

United has not identified any actual patient assignment related to the claims at issue containing the language required by the Sonoco plan, any evidence that it consented to such an assignment, or any document transferring all plan rights, notices, review rights, and enforcement rights from a patient to the emergency providers. At most, United has shown that standard claim forms contained a routine billing notation authorizing payment to the provider. That is not enough to establish that HJC, a downstream assignee of the ER Group's independent state-law claims, could have brought this action as a participant, beneficiary, or assignee under ERISA § 502(a)(1)(B).

**b.  Plaintiff's State Law Causes of Action Are Entirely Independent of ERISA.**

Perhaps more importantly, even if any assignments exist, HJC is not bringing claims as an assignee of patient benefits but rather asserts its own, independent state law causes of action to recover the reasonable value of the ER Groups' medical services under Massachusetts common law and statutory law.

The Supreme Court has squarely held that state laws regulating the *rate* that a plan must pay—as opposed to the structure of benefit coverage—are not preempted by ERISA. *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 88 (2020) ("ERISA does not pre-empt a state law that merely increases costs, however, even if plans decide to limit benefits or charge plan members higher rates as a result."). HJC's claims expressly allege a dispute regarding the *rate* of payment, not the *right* to payment, which are precisely the type of claims that do not implicate ERISA preemption under *Rutledge*.

United's tired argument that HJC's claims arise solely "from the ERISA plans and those plans are thus "essential" to Plaintiff's claims," has been rejected by courts across the country. *See Emergency Grp. of Arizona Pro. Corp. v. United Healthcare, Inc.*, 838 F. App'x 299, 300 (9th Cir.

2021) ("The Medical Groups assert legal duties arising under an implied-in-fact contract based on a course of dealing between the parties. These alleged legal duties "would exist whether or not an ERISA plan existed" and thus are independent from the legal obligations imposed by the ERISA plans."). "Courts have consistently held that an insurer's alleged failure to adequately pay a medical provider constitutes a separate, independent legal duty that is incompatible with ERISA preemption under *Davila*." *Affiliated Dialysis of Joliet, LLC v. Health Care Serv. Corp.*, No. 23 C 15086, 2024 WL 1195607 at \*3 (N.D. Ill. Mar. 20, 2024) (remanding because provider's claims sought the difference between out-of-network rates and contractual rates—not the right to payment under patients' plans); *Mitchell-Hollingsworth Nursing & Rehab. Ctr., LLC v. Blue Cross & Blue Shield of Mich.*, 919 F. Supp. 2d 1209, 1217-1218 (N.D. Ala. 2013) ("It must therefore be determined whether plaintiff's claims in this case are more like a challenge to the 'right to payment' claim that falls under the scope of ERISA, or more like a 'rate of payment' challenge that does not."); *Stanford Health Care v. Health Care Serv. Corp.*, No. 23-CV-4744, 2023 WL 7182990, at \*4 (N.D. Ill. Nov. 1, 2023) ("Stanford's breach of implied contract and quantum meruit claims take each patient's eligibility as a given and do not call upon the court to construe or apply plan provisions. HCSC does not dispute each claimant's eligibility for plan benefits. So Stanford's claims 'are about the 'amount of payment,' not the 'right to payment,' and so not subject to preemption.") (internal citations and quotations omitted); *ACS Primary Care Physicians Sw., P.A. v. United Healthcare Ins. Co.*, 479 F. Supp. 3d 366, 373 (S.D. Tex. 2020) ("As a general proposition, the cases favoring remand (no complete preemption) find that, in cases of both implied-in-fact contracts and express contracts, there is no need to interpret an ERISA plan because the rate to be paid is external from the ERISA plan.")[5]

---

[5] Disregarding HJC's effective disclaimer and explanation as to the rationale behind their inclusion in the claims list, United also floats a long-shot argument that HJC's reference to 850 zero-balance

Accordingly, based on the well-pled allegations of the operative complaint, there is no need to interpret any ERISA plan because: (1) HJC is not challenging coverage determinations made by United in administering the claims; and (2) the amounts sought by HJC are set by Massachusetts common law as the reasonable value of the services rendered, regardless of what any plan terms say about reimbursement.

### III.   HJC Effectively Disclaimed All Claims Which Could Implicate the Federal Officer Statute.

United's argument that the inclusion of seven claims (out of more than 3,000) which purportedly relate to Medicare Advantage plans entitles it to federal officer removal is similarly ill fated. Here again, United ignores the plain language of the Amended Complaint which expressly disclaims any claims related to Medicare Advantage claims. Amended Complaint at ¶ 19. This distinct and unambiguous disclaimer of easily divisible claims is precisely the type of disclaimer that the First Circuit recognized would be effective and enforceable in *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024) (noting that "disclaimers that "clearly carve[ ] out certain factual bases, whether by time span or location, such that any alleged injury could not have happened under the direction of a federal officer" will prevent removal.").

### IV.   United Lacked Any Objectively Reasonable Basis for Removal

United's arguments in support of removal and in opposition to remand boil down to: 1) a claim of diversity predicated exclusively on United's refusal to believe HJC's well-pled

---

claims constitutes a challenge to "some aspect of the claims adjudication or coverage decision itself—which would not be possible without assignments." (ECF 49 at 12). As HJC explained in its opening brief, every CPT level entry for each patient visit was included in the claims list for the sake of completeness. However, as the Amended Complaint makes clear, "this case does not involve denials, partial denials *or other coverage determinations under any of the Defendants' members' plans*, but merely whether the rate of reimbursement for those approved and covered out-of-network services was adequate under Massachusetts law." Am Cmplt. ¶ 3. Here again, United attempts to manufacture federal jurisdiction despite the plain language of HJC's allegations.

allegations; 2) an argument in support of ERISA preemption which United and its counsel have seen consistently rejected by courts in rate of payment cases throughout the country[6]; and 3) a claim of federal officer status (initially advanced prior to receiving any claim details) despite HJC's unequivocal disclaimer of any federal claims. Therefore, United has never identified any objectively reasonable basis for the invocation of federal jurisdiction and removal of this action has caused unreasonable and costly delay. Accordingly, an award of HJC's reasonable attorneys' fees is appropriate.

### Conclusion

Based on the foregoing, HJC respectfully requests that the Court remand this matter to Suffolk County Superior Court and award HJC its costs and fees associated with seeking remand.

Dated: July 9, 2026

Respectfully submitted,

HEALTHCARE JUSTICE COALITION, LLC

By its attorneys,

/s/ John N. Yokow
Phillip Rakhunov (BBO #663746)
John N. Yokow (BBO #694372)
POLLACK SOLOMON DUFFY LLP
31 St. James Ave., Suite 830
Boston, MA 02116
(617) 439-9800
prakhunov@psdfirm.com
jyokow@psdfirm.com

### CERTIFICATE OF SERVICE

The undersigned certifies that this document, filed through the ECF system, will be electronically served on counsel who are registered users of ECF on July 9, 2026.

/s/ *John N. Yokow*
John N. Yokow

---

[6] *See* ECF 38 at FN 1 (collecting adverse rulings against United and counsel from around the country).